Mario LOPEZ, et al.,
Plaintiffs-Appellees,

v.

Margaret M. HECKLER, Secretary of
Health and Human Services, et al.,
Defendants-Appellants.

No. 83-6126.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 13, 1983.

Decided Feb. 22, 1984.

Elena H. Ackel, Bruce Iwasaki, Los Angeles, Cal., for plaintiffs-appellees.

J. Paul McGrath, Stephen Trott, William Kanter, Eloise E. Davies, Dept. of Justice, Washington, D.C., for defendants-appellants.

Before PREGERSON, BOOCHEVER, and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

The Secretary of Health and Human Services ("Secretary") appeals a preliminary injunction ordering her to restore disability benefits to a large number of former recipients of Social Security benefits. Plaintiffs are a class consisting of disabled workers and poor and disabled persons who had earlier been found eligible for Social Security Disability Insurance (SSDI) benefits and Supplemental Security Income (SSI) benefits respectively. *See* 42 U.S.C. §§ 401–31 (1976 & Supp. V 1981) (SSDI); 42 U.S.C. §§ 1381–83 (1976 & Supp. V 1981) (SSI). Plaintiffs challenged the Secretary's termination of their benefits on the ground that the Secretary unconstitutionally refused to give effect to two decisions of this court describing the procedures the statute requires the Secretary to follow in terminating benefits. The district court, 572 F.Supp. 26, found that plaintiffs were likely to succeed on the merits of their claims. It also found that many of the plaintiffs, deprived of the very means with which to live, have either died or suffered further illness as a result of the challenged conduct. Accordingly, the court issued a preliminary injunction which, among other things, enjoined the Secretary to reinstate the benefits of many of the plaintiffs pending litigation of this case.

The Secretary challenges the injunction on two main grounds. First, she argues that the district court lacked jurisdiction over many of the individuals to whom it gave preliminary relief. She claims that jurisdiction was lacking over those individuals who had not exhausted their administrative remedies before commencing this action and over those individuals who had failed to commence this action within sixty days of receiving a final decision from the Secretary. Second, she argues that the district court was barred by sovereign immunity from awarding interim benefits.

FACTS

The preliminary injunction under review here was granted to a class of former disability benefits recipients who are challenging the constitutionality of the procedures used by the Secretary to terminate their benefits. Plaintiffs made two constitutional arguments in the district court—one based on the doctrine of separation of powers, the other based on the due process clause of the fifth amendment.

The separation of powers argument is a challenge to the Secretary's policy of "nonacquiescing" in two decisions of this court. In *Patti v. Schweiker,* 669 F.2d 582 (9th Cir.1982), and *Finnegan v. Matthews,* 641 F.2d 1340 (9th Cir.1981), we held that, under the applicable statutes, the Secretary was required, before terminating a recipient's Social Security benefits, to come forward with evidence that a recipient's medical condition has improved.[1] Although the Secretary disagreed with the holdings in *Patti* and *Finnegan,* she did not seek Su-

---

**1.** *Finnegan* decided the question with regard to "grandfatherees," i.e., individuals who had been transferred to the federal rolls from a state public assistance plan when the Supplemental Security Income (SSI) program was established. *Patti* was an action brought by an SSI claimant who was not a grandfatheree. Although the district court did not subdivide the class it certified, we shall refer to class members who were grandfatherees as "*Finne-*

preme Court review of either case. Instead, she announced in published Social Security rulings that she "does not acquiesce" in and would not follow the holdings in either case. *See* Social Security Rulings 82–10c and 82–49c. Accordingly, she ordered that Social Security Disability benefits be terminated for lack of disability regardless of whether the recipient's medical condition has improved since the initial disability determination. *Id. See also* Social Security Ruling 81–6.

Plaintiffs argue that the Secretary's policy of "nonacquiescing" in this court's decisions violates the constitutional doctrine of separation of powers. They note that "it is, emphatically, the province and duty of the judicial department to say what the law is." *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803). They argue that, by "nonacquiescing," the Secretary is usurping the lawful authority of the judiciary and placing herself above the law. That, they claim, is a plain violation of the Constitution. *See also* U.S. Const. art. II, § 3 (The President "shall take Care that the Laws be faithfully executed.").

Plaintiffs' second constitutional contention is based on the due process clause of the fifth amendment. The thrust of that argument is as follows: The due process clause entitles applicants and recipients of public benefits to have their claims fairly adjudicated by the agency. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). The Secretary's policy of nonacquiescence, by foreordaining the outcome of the hearings claimants will receive, denies plaintiffs a meaningful opportunity to be heard. The availability of judicial review does not cure this flaw.

The Secretary opposed the preliminary injunction on the ground that, except with regard to the parties to a particular action, she is not bound to give effect to court decisions. She also argued that plaintiffs in any event would not suffer irreparable injury as a result of the assertedly illegal action. Finally, she argued that the court lacked jurisdiction over many of the class members and that the court lacked statutory authority to award the type of relief prayed for.

The district court rejected the Secretary's arguments. It certified a class consisting of

all persons who live within this circuit, who (a) receive or received Supplemental Security Income disability benefits or Social Security disability insurance benefits and have been or will be considered for termination after August 30, 1981, or (b) receive or received Supplemental Security Income disability benefits under the "grandfather clause" of the Social Security Act, 42 U.S.C. § 1382c(a)(3)(E), and have been or will be considered for termination after August 25, 1980, such consideration being or having been for the asserted reason that the claimant's disability had ceased.

The district court found that plaintiffs were likely to succeed on the merits. It believed the Secretary was violating the fundamental precept, first enunciated in *Marbury v. Madison,* that government agencies are required to follow and apply the law as interpreted by the courts—the "cornerstone of the doctrine of Separation of Powers that has served our country so well." It also found that the balance of hardships as between the litigants tips sharply in favor of the plaintiffs, who have "already suffered deprivation of life's necessities, further illness, or even death from the very disabilities that the Secretary deemed them not to have," and for whom "[r]etroactive relief would be inadequate, and perhaps too late, to ensure that the purpose of the Social Security disability benefits, i.e., provision of a minimum standard of living for the poor and disabled, will be served." The court found that plaintiffs thus satisfied both of this circuit's alternative tests for granting a preliminary injunction.[2] It accordingly issued a preliminary

---

*gan* -type claimants," and the other class members as "*Patti* -type claimants."

2. We have held that, to obtain a preliminary injunction, a moving party must show "*either* a combination of probable success on the merits

injunction restraining the Secretary from "failing to follow, implement or accord precedential effect to" *Finnegan* and *Patti,* and from implementing the nonacquiescence policy. In addition, paragraph 4(c) of the preliminary injunction required the Secretary to notify the class members that they may apply for reinstatement of benefits and provided that those recipients who assert their belief that they remain disabled would be entitled to reinstatement of their benefits until the Secretary terminates the benefits in compliance with *Patti* and *Finnegan.*[3]

The Secretary sought a stay of part of the preliminary injunction pending appeal of that injunction to this court. She did not seek to stay the injunction's requirement that she give effect to the *Patti* and *Finnegan* decisions with regard to all future terminations. She only sought to stay paragraph 4(c).

The Secretary's request for a stay was denied by both the district court and this court, *see Lopez v. Heckler,* 713 F.2d 1432 (9th Cir.1983), but then granted by Justice Rehnquist, *Heckler v. Lopez,* —— U.S. ——, 104 S.Ct. 10, 77 L.Ed.2d 1431 (1983) (Rehnquist, J., in chambers). Justice Rehn-

quist recognized that stay applications to Circuit Justices on matters before courts of appeals should rarely be granted, but felt that this case was sufficiently unusual to warrant the requested relief. 104 S.Ct. at 12. Justice Rehnquist had serious doubt whether paragraph 4(c)'s requirement that the Secretary pay benefits to class members merely upon their statement that they believe their medical condition has not changed since the Secretary's earlier determination was "consistent with 42 U.S.C. § 405(i) or with this Court's admonition in *Schweiker v. Hansen,* 450 U.S. 785 [101 S.Ct. 1468, 67 L.Ed.2d 685] (1981), that the courts have a duty 'to observe the conditions defined by Congress for charging the public treasury,' *id.,* at 788 [101 S.Ct. at 1470] (quoting *Federal Crop Insurance Co. v. Merrill,* 332 U.S. 380, 385 [68 S.Ct. 1, 3, 92 L.Ed. 10] (1947))." 104 S.Ct. at 14. That problem, Justice Rehnquist thought, was exacerbated by the fact that the injunction gave relief to persons who, Justice Rehnquist believed, had not exhausted their administrative remedies or even presented their claims to the Secretary as required by section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (Supp. V 1981). Those fac-

and the possibility of irreparable injury, or that serious questions are raised and the balance of hardships tips sharply in the moving party's favor." *Beltran v. Myers,* 677 F.2d 1317, 1320 (9th Cir.1982) (emphasis in original).

**3.** Paragraph 4(c) of the Preliminary Injunction reads as follows:

(c) In order to accomplish appropriate restoration of disability benefits pending resolution of this action, the court orders the defendants to implement the following procedure:

(i) Within sixty (60) days following the date of this order, the defendants will notify (a) each class member who had been receiving Supplemental Security Income Disability benefits under 42 U.S.C. § 1382c(a)(3)(E), and who was terminated from such benefits after August 25, 1980, and (b) all other persons who have been terminated from either Title II social security disability insurance or Title XVI Supplemental Security Income Disability after August 30, 1981, for the purported reason that his or her disability had ceased, whether or not such person has appealed, that:

Such person may apply for reinstatement of benefits if he or she believes that his or her medical condition has not improved following the granting of disability benefits.

(ii) Upon receiving such application, the defendants will forthwith reinstate and pay benefits in the monthly amounts such person would have been receiving had his or her benefits not been interrupted.

(iii) Following such reinstatement, if the defendants or their agents or employees conduct a disability investigation or other screening of such person, they will apply the standards set forth in *Patti v. Schweiker* and *Finnegan v. Matthews* and, if they conclude that such person's medical condition has improved and he or she is no longer disabled, they will identify the evidence relied upon to reach that conclusion.

(iv) Following such review, persons who are notified of an initial determination that their benefits shall cease shall be given an opportunity to contest the determination and pending such review, they shall continue to receive aid as provided in current laws and regulations.

1496

tors, he felt, justified staying the preliminary injunction even in the face of the irreparable injury he assumed plaintiffs would suffer without the injunction.

Plaintiffs then requested the Supreme Court to vacate the stay entered by Justice Rehnquist. A divided Court denied plaintiffs' application. *Heckler v. Lopez,* —— U.S. ——, 104 S.Ct. 221, 78 L.Ed.2d 217 (1983). Justice Brennan filed a dissenting opinion in which Justice Marshall joined. Largely for the reasons stated in our opinion denying the stay, Justices Brennan and Marshall believed that the Secretary was not likely to succeed on the merits of her claims, and that the "overwhelming evidence of irreparable harm ... should be the determinative factor ...." 104 S.Ct. at 225, 227. They would therefore have vacated the stay.

Justice Stevens filed an opinion, in which Justice Blackmun joined, concurring in part and dissenting in part. Justices Stevens and Blackmun would have vacated the stay except insofar as it covered persons who had received final decisions from the Secretary more than sixty days before the commencement of this action and who had not timely sought judicial review. Those persons' right to seek review of their termination decisions, Justices Stevens and Blackmun believed, had expired by the time this action was brought. Justices Stevens and Blackmun disagreed with Justice Rehnquist, however, regarding the plaintiffs' compliance with the Act's presentation and exhaustion requirements. With regard to persons whose claims had not expired, Justices Stevens and Blackmun believed the stay was improperly granted. While recognizing that a Circuit Justice's grant of a stay is entitled to substantial deference and "should not be disturbed simply because the other members of the Court would have declined to grant the stay as an original matter," 104 S.Ct. at 222, they believed that this was a case in which reexamination of the stay was proper. Accordingly, they would have vacated the stay in part.

4. Because she has already complied with the notification requirement of paragraph 4(c)(i),

Save for the requirement that she notify class members of their rights, the Secretary on this appeal challenges the same provisions of the preliminary injunction she challenged in her application for a stay.[4] She argues that (a) the court lacked jurisdiction over the persons to whom it gave preliminary relief who had either failed to exhaust their administrative remedies or failed to initiate judicial review within the requisite time period, and, (b) because the court lacked statutory authority to award benefits, the relief given was barred by the United States' sovereign immunity. She also argues that there would appear to be no basis whatsoever for awarding relief to persons whose benefits were terminated before *Patti* and *Finnegan* became final.

## BACKGROUND

This appeal does not raise issues of judicial interference in administrative agencies' discretion to formulate their own procedures, *see Vermont Yankee Nuclear Power Corp. v. NRDC,* 435 U.S. 519, 524, 98 S.Ct. 1197, 1202, 55 L.Ed.2d 460 (1978), or of courts "dictating to the agency the methods, procedures, and time dimension" of inquiries within its jurisdiction. *See FPC v. Transcontinental Gas Pipe Line Corp.,* 423 U.S. 326, 333, 96 S.Ct. 579, 583, 46 L.Ed.2d 533 (1976). While those considerations might conceivably be relevant in determining whether a court should require the Secretary to come forth with evidence of medical improvement before terminating benefits, that is not the question before us now. For the purposes of this appeal, the Secretary does not challenge the correctness of our holdings in *Patti* and *Finnegan.* Nor, indeed, is that question open in the district court. We have already held that the Social Security Act forbids the Secretary from terminating benefits of persons she has determined to be disabled until she comes forth with evidence of medical improvement. That is the law in this circuit.

any challenge to that provision would be moot.

Far from raising questions of judicial interference in executive actions, this case presents the reverse constitutional problem: the executive branch defying the courts and undermining what are perhaps the fundamental precepts of our constitutional system—the separation of powers and respect for the law. *See Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803); *Cooper v. Aaron,* 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958).[5]

Of equal significance, the district court has found that some class plaintiffs have already died or suffered further illness as a result of the Secretary's actions. We agree with that finding. It follows that, in the absence of an injunction, other old or infirm people will die or be subjected to additional serious pain and suffering. It is in that light that we must now determine whether we should overturn the district court's preliminary injunction, an order that governs the rights of the parties only until such time as the case is decided on its merits.

## STANDARD OF REVIEW

In reviewing the grant or denial of a preliminary injunction, we apply an abuse of discretion standard. *See Wilson v. Watt,* 703 F.2d 395, 398 (9th Cir.1983). We reverse only if we conclude that the district court's decision was based on an error of law or on clearly erroneous findings of fact. *See id.; Beltran v. Myers,* 677 F.2d 1317, 1319 (9th Cir.1982); *Aleknagik Natives Ltd. v. Andrus,* 648 F.2d 496, 501 (9th Cir.1980). Application of an incorrect legal standard for preliminary relief and misapprehension of the law with regard to the underlying issues in the case are grounds for reversal. *See Sports Form, Inc. v. United Press International, Inc.,* 686 F.2d 750, 752 (9th Cir. 1982); *Wright v. Rushen,* 642 F.2d 1129, 1132 (9th Cir.1981).

The Supreme Court's recent holding in *United States v. Mendoza,* —— U.S. ——, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984), is not to the contrary. In *Mendoza,* the Court held that the doctrine of nonmutual collateral estoppel does not apply against the United States. Accordingly, the government's failure to appeal an adverse district court decision on a constitutional question was held not to prevent it from relitigating the same question in a case against a different party. A contrary holding, the Court explained, would impose on the government, which litigates by far more frequently than any private party, the onerous burden of appealing every holding with which it does not agree and would substantially thwart the development of important questions of law by freezing the first final decision on a particular issue.

Plaintiffs here, however, do not seek to invoke collateral estoppel. Nor do they contend that there is no judicial forum in which the Secretary can obtain a ruling that she may handle benefit claims in a manner she believes proper. Rather, they argue only that the executive must give general effect within a circuit to a final decision of the Court of Appeals for that Circuit interpreting a federal law. Such a rule does not limit the government's ability to delay testing legal issues in the Supreme Court until conflicts have arisen among the circuits. Nor does it otherwise limit the discretion and flexibility the government needs in its handling of litigation. It requires only that the executive branch recognize the authority of appellate courts to interpret the law and that it refrain from acting in an arbitrary and lawless manner.

---

**5.** In *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803), the Supreme Court stated that "it is emphatically the province and duty of the judicial department to say what the law is." In *Cooper v. Aaron,* 358 U.S. 1, 18, 78 S.Ct. 1401, 1409, 3 L.Ed.2d 5 (1958), the Court stated that

> [*Marbury v. Madison*] declared the basic principle that the federal judiciary is supreme in the exposition of the law of the Constitution, and that principle has ever since been respected by this Court and by the Country as a permanent and indispensable feature of our constitutional system.

In *Cooper,* the Court said that it followed from that "basic principle" that the federal judicial interpretation of the Constitution is the "supreme Law of the Land" referred to in the supremacy clause, U.S. Const. art. VI, cl. 2. The Court reasoned further that state officers, committed by oath to support the Constitution, are bound by such interpretations of the instrument. What the Court said with regard to the Constitution applies with full force with regard to federal statutory law, which is also the "supreme Law of the Land," U.S. Const. art. VI, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land."), and applies just as strongly to federal executive officers, who, as the President's representatives, are required by the Constitution itself to "faithfully execute" the law. U.S. Const. art. II, § 3. Indeed, in *Marbury v. Madison,* Chief Justice Marshall derived the principle of judicial review from the duty of courts to interpret and apply ordinary law.

■ Before granting a preliminary injunction, a district court must find that the moving party has demonstrated "*either* a combination of probable success on the merits and a possibility of irreparable injury, *or* that serious questions are raised and the balance of hardships tips sharply in the moving party's favor." *Beltran v. Myers*, 677 F.2d 1317, 1320 (9th Cir.1982) (emphasis in original). The tests are "not separate," but represent the "outer reaches of 'a single continuum.' " *Los Angeles Memorial Coliseum Commission v. National Football League*, 634 F.2d 1197, 1201 (9th Cir.1980) (quoting *Benda v. Grand Lodge of International Association of Machinists and Aerospace Workers*, 584 F.2d 308, 315 (9th Cir. 1978), *cert. dismissed*, 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979)). At no point in the continuum is the court "bound to decide doubtful or difficult questions of law." *Dymo Industries, Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir.1965). "[T]he relative hardships to the parties" is the "critical element" in deciding when a stay is justified. *Benda*, 584 F.2d at 314–15. Finally, the public interest is a factor to be strongly considered in cases such as this one. *See Warm Springs Dam Task Force v. Gribble*, 565 F.2d 549, 551 (9th Cir.1977).

■ For purposes of this appeal, the Secretary does not dispute the district court's finding that the balance of hardships tips sharply in plaintiffs' favor. Nor does she deny that the public interest favors granting the injunction. The Secretary's arguments relate only to some aspects of the merits of the case to be litigated. Our task, therefore, is to review the district court's finding that the plaintiffs are likely to succeed on the merits. To the extent we are convinced that the district court misapprehended the law in arriving at that conclusion, we must vacate the injunction as an abuse of discretion. However, to the extent we believe plaintiffs raise serious questions of law or are likely to prevail on those questions, we must, in light of the undisputed findings concerning hardship and the public interest, affirm the injunction. *See Wilson v. Watt*, 703 F.2d at 399. A court of appeals, like a district court, is not required to resolve doubtful or difficult questions of law at this preliminary stage. *See Dymo Industries, Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir.1964) ("[O]n application for preliminary injunction the [district] court is not bound to decide doubtful and difficult questions of law.").

■ The Secretary argues that *de novo* review of the district court's decision is required because she is challenging the district court's jurisdiction to award the relief it awarded here. The Secretary's observation is no more than a specific application of the general rule stated above that all legal issues are reviewable *de novo*. We agree that no deference should be given to the district court's findings with regard to legal, including jurisdictional, issues in this case and that we should therefore review *de novo* the district court's finding that plaintiffs are likely to succeed on the merits of those issues. With regard to any underlying factual findings, however, we see no reason to depart from the usual deferential standard of review.

■ Although the Secretary did not say so, she may have been attempting to argue that we are required to decide *finally* all jurisdictional issues, instead of merely reviewing the district judge's determination that plaintiffs raised serious legal questions and were likely to succeed on the merits. The cases she cites, however, hold only that a grant of a preliminary injunction is an abuse of discretion when "want of jurisdiction is evident upon the face of the bill," *United States v. Corrick*, 298 U.S. 435, 438, 56 S.Ct. 829, 830, 80 L.Ed. 1263 (1936), and that a preliminary injunction should be overturned on appeal when there is "an insuperable objection to the maintenance of the suit in point of jurisdiction and where it clearly appears that the decree was the result of an improvident exercise of judicial discretion," *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 52, 58 S.Ct. 459, 464, 82 L.Ed. 638 (1938). Those cases are consistent with our holding that "doubtful or difficult questions of law" need not be finally resolved at this preliminary stage. *See Dymo Industries*, 326 F.2d 141, 143 (9th Cir.1964). We see no reason to treat com-

plex jurisdictional issues any differently from other complex legal issues. Nor do we think that an injunction that the court has jurisdiction to issue but which covers too many individuals presents the same type of threshold jurisdictional problem as an injunction that the court has no jurisdiction to issue at all. In any event, the argument that the Secretary may have been attempting to make would be applicable at most to three issues in this case—those involving the presentation requirement, mandamus jurisdiction, and sovereign immunity. Those are the only issues that are even arguably denominable as "jurisdictional." As is made clear below, even if the argument that we are required to decide those issues is correct, it would not affect the outcome of this appeal.

## DISCUSSION [6]

## I. CLASS MEMBERS WHOSE BENEFITS WERE TERMINATED BEFORE *PATTI* AND *FINNEGAN* BECAME FINAL

█ The preliminary injunction issued by the district court grants relief to *Finnegan*-type claimants whose benefits "have or will be terminated after August 25, 1980," and to *Patti*-type claimants whose benefits "have or will be terminated after August 30, 1981." The district court arrived at those dates by adding 60 days to the dates the respective decisions became final and then subtracting a year. The 60 days represented the amount of time the district court believed was available for the Secretary to seek Supreme Court review of the

decisions.[7] The year was subtracted because the Secretary has authority to reopen an administrative decision for any reason within one year. *See* 20 C.F.R. 404.988, 416.1488 (1983).

The Secretary argues that there is no basis for granting any relief to claimants who had received final decisions on their terminations before *Patti* and *Finnegan* became final. We believe that the Secretary is clearly correct on this point.

Although the regulations specifically authorize the Secretary to reopen decisions within one year for any reason, the Supreme Court has squarely held that the Secretary's decision not to reopen a case is, unless challenged on constitutional grounds, entirely a matter of the Secretary's discretion not reviewable by the courts. *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). This is not a case in which the refusal to reopen raises constitutional problems. Indeed, claimants who had received final decisions before the case they rely on was decided cannot even raise the constitutional challenge to the underlying termination raised by the other claimants here. Thus, regardless of how wrongful the district court may have believed a refusal to reopen would have been under the circumstances presented by this case, the court lacked the authority to grant any relief to claimants who had received final decisions on their terminations before the case they rely on was decided. We therefore vacate the preliminary injunction to the extent it granted relief to *Finnegan*-type claimants whose benefits were termi-

**6.** Before discussing the issues raised in this appeal, a preliminary point should be mentioned: although Justice Rehnquist considered many of the same issues upon granting the Secretary's stay request, we do not give controlling weight to the decision of a majority of the Court not to vacate the stay he granted. As Justice Stevens noted in his opinion concurring in part and dissenting in part, "in considering an application of this kind, substantial deference must be paid to the judgment of the Circuit Justice.... The Circuit Justice's decision should not be disturbed simply because the other members of the Court would have declined to grant the stay as an original matter." —— U.S. ——, 104 S.Ct. 221, 222, 78 L.Ed.2d 217 (1983) (citation omitted). Thus,

we cannot assume from the Court's action that all the Justices in the majority agreed with Justice Rehnquist's application of the relevant law.

**7.** Under 28 U.S.C. § 2101(c) (1976), the government actually has ninety days in which to file a certiorari petition. When this was pointed out to the district court, the court refused to modify the injunction and instead reaffirmed the sixty-day period as a compromise between the ninety days urged by the government and the 30-day period urged by the plaintiffs as the time allowed to seek a stay of the mandate of a court of appeals. *See* Fed.R.App.P. 41(b). The court's decision in this regard was plainly within the scope of its discretion.

**1500**

nated before August 25, 1981, and to *Patti*-type claimants whose benefits were terminated before August 30, 1982, unless they then either were in the process of appealing the termination or still had time remaining for so doing.[8]

## II. PROCEDURAL REQUIREMENTS

### A. *42 U.S.C. § 405(g)*

Section 405(g) specifies three requirements for judicial review of decisions by the Secretary: (1) a final decision made after a hearing; (2) commencement of a civil action within 60 days after the mailing of notice of such decision, or such further time as the Secretary may allow; and (3) filing of the action in an appropriate district court. 42 U.S.C. § 405(g) (Supp. V 1981). On appeal, the Secretary does not challenge the appropriateness of the district court's venue. She does argue, however, that some plaintiffs have not met the first two requirements. Her arguments are addressed below.

### 1. *The Finality Requirement*

The Supreme Court has interpreted the first requirement—that of a final decision made after a hearing—as consisting of two separate elements: (a) the waivable element that administrative remedies be exhausted (the exhaustion requirement), and (b) the nonwaivable element that the claim for benefits be presented to the Secretary (the presentation requirement). *Mathews v. Eldridge,* 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976). The two parts of the finality requirement will be addressed separately.

### a. *The Exhaustion Requirement*

In *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the Supreme Court held that the exhaustion requirement was not jurisdictional, but could be waived. It recognized that there were situations in which requiring exhaustion "would not merely be futile for the applicant, but would also be a commitment of

administrative resources unsupported by any administrative or judicial interest." 422 U.S. at 765–66, 95 S.Ct. at 2467. In such cases, a decision may be deemed "final" before exhaustion of remedies is completed.

██ We believe that this is plainly the type of case as to which exhaustion of remedies would be futile. In *Salfi,* the Court described the policies behind the exhaustion requirement:

> Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.

422 U.S. at 765, 95 S.Ct. at 2467. None of those policies would be served by requiring exhaustion of administrative remedies with regard to the constitutional questions involved here. The question whether the Secretary is bound to apply the clear holdings of a United States Court of Appeals to persons within the circuit who were not parties to the original action is, one hopes, not a question as to which the Secretary has much experience or expertise to offer. Nor would compiling an administrative record be particularly useful in resolving that question. The possibility of the agency correcting its own errors at any level but the very top is precluded by the Secretary's order that this court's holdings not be followed. And the formality with which the Secretary has expressed her policy of nonacquiescence makes it clear that she herself will not correct the error. Indeed, in her briefs the Secretary does not even suggest the possibility that she might reconsider the validity of her nonacquiescence policy. Instead, she argues that exhaustion is not futile because many of the claimants may have their benefits reinstated even under the nonacquiescence policy. Plainly, however, plaintiffs are entitled to base their

---

**8.** The new dates retain the 60-day period that the district court added to the dates the decisions became final. We have held that the

court's decision so to limit the class was well within its discretion. *See supra* note 7.

claims for benefits exclusively on the argument that the Secretary's refusal to apply the law as interpreted in *Patti* and *Finnegan* is unconstitutional. Requiring the claimants to go through several levels of administrative appeals with that claim would clearly be a "commitment of administrative resources unsupported by any administrative or judicial interest." *See Salfi,* 422 U.S. at 766, 95 S.Ct. at 2467. Indeed, such an exercise would seem to be the very height of futility.

With regard to the underlying statutory claim, the futility of exhaustion is even clearer. The issue whether the Secretary must present medical evidence before terminating benefits has not only already been litigated through all the required administrative levels, it has also already been decided by the federal district courts in *Patti* and *Finnegan* and by this court. On the underlying substantive claim, the position of the Secretary could not be clearer. That nothing short of a court order will suffice to vindicate the asserted right is demonstrated glaringly by the fact that the Secretary has only given effect to the holdings in *Patti* and *Finnegan* with regard to the parties to those actions. As the facts of this case illustrate, exhaustion of administrative remedies is futile by definition in any case challenging an announced policy of nonacquiescence.[9]

The Court suggested in *Salfi* that determining whether exhaustion is futile may be a question reserved exclusively for the Secretary. 422 U.S. at 766, 95 S.Ct. at 2467 ("A court may not substitute its conclusion of futility for the contrary conclusion of the Secretary."). In *Eldridge,* however, the Court made it clear that, under certain circumstances, courts may waive the exhaustion requirement over the Secretary's objection. The Court recognized that "cases may arise where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate." 424 U.S. at 330, 96 S.Ct. at 900.

In *Eldridge,* plaintiff claimed that the Constitution entitled him to an evidentiary hearing before termination of his benefits. The Court thought that deferring to the Secretary's conclusion regarding futility was inappropriate in that case because the constitutional challenge was "entirely collateral" to the claim for benefits and because, "unlike the situation in *Salfi,* denying Eldridge's substantive claim 'for other reasons' or upholding it 'under other provisions' ... would not answer his constitutional challenge." 424 U.S. at 331–32, 96 S.Ct. at 901 (citation omitted).

Here, as in *Eldridge,* plaintiffs present a constitutional challenge [10] entirely

---

**9.** Although the announcement of the policy of nonacquiescence removes any doubt about the futility of pursuing administrative remedies, we believe that, even in the absence of the announcement, the Secretary's disregard of the holdings in *Patti* and *Finnegan* would certainly be enough to raise serious questions as to whether pursuing administrative remedies would be futile. We therefore hold that the required preliminary showing on this issue was satisfactorily made even by those class members who, before the relevant Social Security rulings were issued, had allowed the time for initiating an administrative appeal to run.

**10.** Although plaintiffs have clearly framed their case as one seeking to vindicate constitutional rights, three Justices, on the limited pleadings and record presented to the Supreme Court on the motion to stay the temporary restraining order, signed opinions which appear to question whether plaintiffs' claims are indeed constitutional. Justice Rehnquist viewed the plaintiffs' claims as alleging merely that the

Secretary's evidentiary showing was insufficient. 104 S.Ct. at 15. And although they did not elaborate, Justices Stevens and Blackmun indicated that they too believed that the constitutional nature of plaintiffs' claims should be disregarded. 104 S.Ct. at 224.

We believe that plaintiffs' claims may properly be treated as constitutional for purposes of the inquiry before us. Although plaintiffs' standing rests on their entitlement to benefits that the Secretary has terminated without the required evidentiary showing, plaintiffs have based their claim for benefits almost exclusively on constitutional arguments. More importantly, the Secretary defends her case on the merits by asserting her power to ignore the holdings of this court. Because the arguments on both sides are therefore predominantly constitutional on the merits, deciding this case will almost certainly require resolution of constitutional questions. For purposes of determining whether exhaustion should be waived, it is the constitutional nature of the questions to be

collateral to the substantive claim for benefits.[11] Also as in *Eldridge,* denying or upholding plaintiffs' entitlement to benefits on other grounds would not answer the constitutional challenge.

■ Even if we disregard the constitutional nature of plaintiffs' claims, this is not an appropriate case for deferring to the Secretary's conclusion regarding futility.

If plaintiffs are regarded only as vindicating once again the right that this court has already held in *Patti* and *Finnegan* they are entitled to, then the claim is just as collateral to the substantive claim for benefits as was Eldridge's. And granting or denying benefits on other grounds will still not answer the claim being asserted—*i.e.,* that the Secretary may not terminate benefits before she presents medical evidence of im-

resolved, not of the right to be vindicated, that should be important. As the Court explained in *Califano v. Sanders,* 430 U.S. at 109, 97 S.Ct. at 986, *Salfi* and *Eldridge* rested in part on the view that "[c]onstitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions." Thus, even assuming that plaintiffs here are not seeking to enforce their constitutional rights, we believe that this case should be considered a constitutional one for purposes of determining whether waiver of the exhaustion requirement is appropriate. Whether plaintiffs' claims are "constitutional" for purposes of the 60-day limitation, *see infra,* is a somewhat more difficult issue. We believe, however, that plaintiffs have at least raised serious legal questions with regard to that issue.

We also note that considering this a constitutional case would not "open the floodgates," even if we focused on the right to be vindicated. Unlike the ordinary case in which the Secretary is alleged to have applied the law incorrectly, and which might arguably be framed in such a way as to implicate the constitutional duty of the Secretary to apply the law faithfully, the Secretary here has announced in plain terms that she will not follow the holdings of this court. Clearly the two types of cases are materially different. While with regard to *Patti* and *Finnegan* the Secretary may have violated only a statutory duty, with regard to recipients whose benefits were terminated after *Patti* and *Finnegan* became final the Secretary also violated her constitutional duty to execute the law faithfully.

With regard to the second constitutional claim, the one based on the due process clause, the source of the Justices' doubts is not as readily apparent. Although the Court has held that a pretermination hearing is not constitutionally required in cases such as this one, *see Eldridge,* 424 U.S. at 332–49, 96 S.Ct. at 901–09, the Court relied in part on the availability of post-deprivation hearings before the administrative agency. Claimants here argue that the Secretary's policy of nonacquiescence renders those post-deprivation hearings meaningless. Although the argument requires further exploration and refinement, it is not on its face frivolous. In addition, the argument that a procedural scheme permitting the Secretary to

terminate benefits without first coming forth with any evidence whatever violates the due process clause also would not appear to be frivolous.

This opinion discusses the Secretary's arguments as applied to both the constitutional and the nonconstitutional claims. As our opinion makes clear, we do not believe that the constitutional nature of plaintiffs' claims is likely to be determinative of the issues involved.

11. The Secretary argues that "the contention made on behalf of the class members that their benefits may not be terminated except upon a showing of medical improvement goes to the very heart of the merits of their substantive claim for disability benefits; it is not a 'collateral' issue like the asserted right to a pretermination hearing involved in *Mathews v. Eldridge.*" The Secretary's argument ignores the fact that the question the Secretary sees as the issue on the merits has already been decided by this court. The real issue on the merits is whether the Secretary must apply the holdings of this court on a general basis within this circuit. Because we agree with the district court that the plaintiffs are likely to succeed on the merits of that issue, the underlying statutory issue need not be reached. There can be no doubt that the separation-of-powers issue is entirely collateral to the substantive claim for disability benefits.

Even with regard to the underlying statutory issue, however, we believe that the Secretary's argument is without merit. Contrary to the Secretary's suggestion, the claim that the Secretary must come forth with some evidence of medical improvement before terminating benefits is entirely distinct from the question whether the claimant continues to be disabled. As the Secretary herself concedes, claimants may be found entitled to benefits even if *Patti* and *Finnegan* were not applied, and they may be found ineligible for benefits even under *Patti* and *Finnegan.* Like *Eldridge,* plaintiffs have complained of the procedures used by the Secretary in terminating benefits. We see no possible grounds for distinguishing their claim that benefits may not be terminated except upon a showing of medical improvement from the claim in *Eldridge* that benefits may not be terminated except after a hearing.

provement. The only difference between this case and *Eldridge* would then be that the asserted right in one case was constitutional and in the other statutory. But in determining whether deference to the Secretary on futility is appropriate the important factors should be those that bear on the reliability of the Secretary's conclusions regarding futility. Whether the source of the asserted right is the Constitution or a statute does not appear to bear on that issue. *See Heckler v. Lopez,* —— U.S. ——, 104 S.Ct. 221, 224, 78 L.Ed.2d 217 (1983) (Stevens, J., concurring in part and dissenting in part) ("[I]t should make no difference whether plaintiffs' claim is based on the statute or the Constitution."); *Liberty Alliance for the Blind v. Califano,* 568 F.2d 333, 344 (3d Cir.1977).

■ Indeed, deferring to the Secretary on futility seems even less appropriate here than in *Eldridge.* Plaintiffs here have shown that the Secretary is deliberately and unequivocally flouting the procedures she is required by law to follow. In contrast to the situation in *Eldridge,* the Secretary here knows precisely what the courts say the law is and is nevertheless refusing to apply the law as so defined. That the Secretary, as a member of the executive, is required to apply federal law as interpreted by the federal courts cannot seriously be doubted. *See Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803); U.S. Const. art. II, § 3 (The President "shall take Care that the Laws be faithfully executed.").[12]

■ Under the circumstances prevailing here, it is likely not only that administrative appeals would prove fruitless, but also that the Secretary is using the exhaustion requirement as a mechanism to evade the law she is required to apply. Once bad faith and abuse of the statutory procedures have been shown to the extent shown here, requiring exhaustion seems not just unnecessary, but a perversion of the administrative and judicial system. We believe that the Secretary's decision to terminate claimants' benefits without complying with the procedures required by the statute became "final" with regard to each class member, and thus immediately reviewable by the district court, at the point each class member's benefits were terminated.

### b. *The Presentation Requirement*

■ The Secretary argues that the nonwaivable element of the finality requirement has not been met because plaintiffs have not shown that all members of the class have filed a claim for benefits. We disagree. Courts have interpreted the presentation requirement liberally. In *Eldridge,* the Court suggested that all that was necessary to fulfill the nonwaivable element was a claim that may be said to form the basis for "some decision by the Secretary." 424 U.S. at 328, 96 S.Ct. at 899. Accordingly, some courts have found that mere termination of benefits fulfills the presentation requirement. *See Kuehner v. Schweiker,* 717 F.2d 813, 817 (3d Cir.1983); *Ellison v. Califano,* 546 F.2d 1162, 1164 (5th Cir.1977); *Wilson v. Edelman,* 542 F.2d 1260, 1270–71 (7th Cir.1976); *Kennedy v. Harris,* 87 F.R.D. 372, 376 (S.D.Calif.1980). These decisions seem eminently sensible. Underlying them is the theory that the claimant's failure to report that his disability has ceased constitutes a continuing claim for benefits and that that claim is denied when the Secretary terminates the benefits. All of the class members here have had their benefits terminated by the Secretary and have thus met the presentation requirement as defined by these courts.

■ Even if mere termination were not sufficient to satisfy the presentation re-

---

12. The Secretary, in defending her nonacquiescence policy, pointed out in the district court that the Internal Revenue Service issues nonacquiescence rulings frequently. IRS nonacquiescence rulings, however, are not applicable within the circuit that rendered the opinion the IRS does not acquiesce in. That is plainly a material difference. Because conflicts among the circuits are inevitable, the executive clearly cannot be expected always to give nationwide effect to the holdings of a court of appeals. But, far from supporting the Secretary's argument, the IRS's nonacquiescence policy recognizes that the holdings of a court of appeals must be given effect within that circuit.

quirement, plaintiffs would prevail on this issue. Each plaintiff, shortly before his benefits were terminated, submitted a completed Social Security questionnaire indicating that he believed he was still disabled and entitled to benefits. The Supreme Court has held that section 405(g) requires no more formal a presentation than that. *Eldridge,* 424 U.S. at 329, 96 S.Ct. at 900. Although in *Eldridge* the plaintiff had submitted both a questionnaire and a letter, the presence of the letter does not distinguish *Eldridge* from this case. The point was that the plaintiff had "specifically presented the claim that his benefits should not be terminated because he was still disabled." *Id.* Even without the letter, the questionnaire served that purpose in *Eldridge,* and it suffices here as well. *See also Heckler v. Lopez,* —— U.S. ——, 104 S.Ct. 221, 223 n. 2, 78 L.Ed.2d 217 (1983) (Stevens, J., concurring in part and dissenting in part) ("*Eldridge's* letter hardly added to the 'claim' he had already presented."); *cf. Wheeler v. Heckler,* 719 F.2d 595, 599–600 (2d Cir.1983) (presentation requirement not satisfied because "plaintiffs presented no allegations that the unnamed plaintiffs had initiated even informal communications with SSA or DDSD, either prior or subsequent to receipt of a termination notice").

■ The Secretary concedes, as she must, that the presentation required by section 405(g) is *not* the presentation of a challenge to the termination decision. *Eldridge* would dispose of any such argument, for Eldridge presented both the questionnaire and the letter *before* his benefits were terminated. Moreover, requiring that the claim be presented after the termination would have the curious effect in this case of requiring that the presentation come after the final decision, when, as discussed above,

the statute clearly contemplates that the presentation be the *basis* for the final decision. It is for the same reason that the Secretary errs when she argues that section 405(g) requires that the claim be presented after a tentative termination decision. If presentation of the claim must form the basis for the Secretary's final decision, then it should form the basis for her tentative decision as well. The Secretary's suggestion would have the effect of requiring a presentation in the middle of the decision-making process, whereas Congress appears to have envisioned the presentation as the initiation of that process.

### 2. The Sixty-Day Limitation

Section 405(g) provides that judicial review of final decisions of the Secretary must be "commenced within sixty days after the mailing ... of notice of such decision or within such further time as the Secretary may allow." 42 U.S.C. § 405(g) (Supp. V 1981). The Secretary argues that the preliminary injunction must be reversed insofar as it grants relief to persons who received a final decision from the Secretary more than 60 days before the commencement of this action. Plaintiffs argue that, when administrative exhaustion is waived, a time limitation that comes into play only after administrative exhaustion is completed must also be waived. Neither argument is entirely correct.[13]

■ Insofar as plaintiffs argue that waiver of exhaustion leaves them without an exhaustion date from which to begin counting the 60 days, plaintiffs misperceive the effect of a waiver of the exhaustion requirement. Section 405(g) authorizes federal courts to review "final decisions" of the Secretary. As *Salfi* and *Eldridge* make

13. As noted above, Justices Stevens and Blackmun concurred in the majority's denial of plaintiffs' application to vacate the stay insofar as it stayed those parts of the preliminary injunction that applied to persons who had received final decisions from the Secretary more than 60 days before the commencement of this action and who had not timely sought judicial review. We note, however, that in arriving at that conclusion, Justices Stevens and Blackmun did not have the benefit of any of the arguments presented on this appeal. Because Justice Rehnquist did not rely on, or even discuss, the 60-day requirement in his opinion granting the stay, plaintiffs did not address the 60-day issue in their application to the Court. Nor, indeed, had the arguments been presented adequately at any of the preceding stages. Although the Secretary did briefly mention the issue in her district court briefs, she did not urge the argument. The district court did not discuss the issue in its opinion.

clear, waiver of the exhaustion requirement constitutes a determination, either by the Secretary or by the court, that the Secretary's decision became sufficiently final to warrant judicial review before exhaustion of administrative remedies was completed. In demonstrating that administrative exhaustion was futile in this case, plaintiffs have also demonstrated that they have received a final decision for purposes of the 60-day requirement.

The Secretary is mistaken, however, when she suggests that the failure of some class members to commence their civil action within 60 days of their final decisions has resulted in the expiration of their claims. As the Court made clear in *Salfi,* the 60-day limitation is not jurisdictional. 422 U.S. at 764, 95 S.Ct. at 2466. It is thus like the time limitation for initiation of Title VII claims, which the Court held in *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), was subject to waiver and equitable tolling. It is thus also like the other waivable requirement of section 405(g)—the exhaustion requirement—which the Court held in *Eldridge* was waivable by the Secretary and, in unusual cases, by the court. The traditional requirements for equitable tolling of a statute of limitations are not present here. And, because she raised the issue, albeit in the most cursory manner, before the district court, the Secretary may not be deemed to have waived the 60-day requirement herself. We find, however, that plaintiffs are likely to prevail on this issue under at least one of three substantial legal theories. They have, at any rate, raised serious legal questions in all three instances.

First, we note that this is quite evidently not the type of case Congress had in mind when it designed the 60-day limitation. Section 405(g)'s time limitation differs significantly from ordinary statutes of limitations, which generally allow plaintiffs considerably more than 60 days in which to assert their legal rights. *See, e.g., Block v. North Dakota,* —— U.S. ——, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983) (12-year statute of limitations applicable to actions to quiet title to real property in which the United States claims an interest). Ordinary statutes of limitations reflect a congressional intention to preclude litigation of stale claims and to allow parties to repose. In contrast, section 405(g), like other statutes governing review of administrative action, was designed to promote administrative efficiency. It reflects Congress's desire to facilitate the processing of large numbers of administrative claims.

In setting the time limitation for section 405(g) claims, Congress had to accommodate the agency's interest in efficient procedures with the claimant's interest in having enough time to prepare his case. The brevity of the period it gave claimants suggests that it designed the limitation for the run-of-the-mill case involving a dispute over whether particular evidence demonstrates a disability. With regard to cases involving substantial legal, let alone constitutional, issues, 60 days may provide too short a period. The problem is even graver when the case is one in which the exhaustion requirement has been waived. Unlike the ordinary claim for benefits, in which filing a civil action is simply the next step in a procedure that has been going on at the administrative level for some time and in which a complete administrative record has been compiled, plaintiffs in cases such as the one before us would, if the ordinary period were applied, have only 60 days from the time in which the initial deprivation of their rights occurred in which to prepare their cases for litigation. We doubt that Congress considered that a 60-day limitations period reasonably afforded protection to the claimant's interests in such cases. Indeed, limiting claimant's access to the courts in such cases to such a short period might infringe upon the claimant's constitutional right to be heard "at a meaningful time and in a meaningful manner." *See Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). *See also Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) (ordinarily valid procedural requirements constitute unconstitutional infringement on right of access to courts when applied to indigent welfare recipients seeking divorce).

In any event, a strong argument can be made that the 60-day limitation does not apply where a serious constitutional claim is presented. In *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), the Court explained that the holding in *Eldridge* was derived from the "well-established principle" that a statutory scheme should not be read "to take the 'extraordinary' step of foreclosing jurisdiction unless Congress' intent to do so is manifested by ' "clear and convincing" ' evidence," and that "when constitutional questions are in issue, the availability of judicial review is presumed." 430 U.S. at 109, 97 S.Ct. at 986 (quoting *Salfi,* 422 U.S. at 762, 95 S.Ct. at 2465). *Sanders* thus recognizes a special presumption in favor of access to courts for the resolution of constitutional questions. As discussed above, the limitations period of section 405(g) is an unduly burdensome procedural obstacle to judicial review of claims such as this one, particularly when exhaustion of administrative remedies has been waived. We believe that the presumption referred to in *Sanders* may well compel a holding that the 60-day limitations period of section 405(g) does not apply to cases involving substantial constitutional questions collateral to a substantive claim for benefits.[14] Because plaintiffs have, at the least, raised serious legal questions regarding the constitutional nature of their claims,[15] they have made the required preliminary showing that the 60-day limitation does not apply to them.

■ We also believe that there is, at the least, a serious possibility that plaintiffs will prevail on this issue on the theory that the 60-day limitations period may be waived over the Secretary's objection. Although determining whether to waive the 60-day limitations period should ordinarily be a matter left to the Secretary's discretion, we believe that cases may arise in which "def-

erence to the agency's judgment is inappropriate." *Eldridge,* 424 U.S. at 330, 96 S.Ct. at 900. We believe that this is a case in which the conduct on the Secretary's part is so unusual as to render deference to her judgment inappropriate. As we noted above, the district court in this case found that plaintiffs were likely to succeed on the merits of their argument that the Secretary is deliberately flouting the law she is required to apply. Because there is no doubt what this court says the Secretary must do, she must expect that all her terminations ignoring *Patti* and *Finnegan,* will, if challenged, be reversed by all district courts within this circuit. Only procedural flaws in claimants' challenges offer her any hope of success in such courts. Thus, as we noted above, the Secretary appears to be using the procedural requirements as a mechanism for evading the law she is required to apply. In extraordinary cases involving bad faith on the part of the Secretary, the Secretary's interest in administrative efficiency should give way to the claimants' interest in adequately preparing their cases, an interest that, as we have seen, is not adequately protected by the 60-day limitation in cases such as this one.

■ Finally, we believe that, even if the limitations period is applicable, the number of class members whose claims would be time-barred is substantially smaller than the Secretary suggests. In the analogous Title VII context, the statute of limitations is deemed tolled retroactively for all unnamed class members as of the time the class representative filed his administrative charge with the EEOC. *See Albemarle Paper Co. v. Moody,* 422 U.S. 405, 414 n. 8, 95 S.Ct. 2362, 2370 n. 8, 45 L.Ed.2d 280 (1975); *Williams v. Owens-Illinois, Inc.,* 665 F.2d 918, 923 (9th Cir.), *cert. denied,* 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982);

---

**14.** The Secretary, quoting *Block v. North Dakota,* 103 S.Ct. at 1822, points out that "[a] constitutional claim can become time-barred just as any other claim can." That observation, however, misses the mark. The question before us is not whether constitutional claims may be time-barred, but whether the 60-day limitations period applies to constitutional claims as well as ordinary claims for benefits.

If the 60-day limitation is inapplicable, then a substitute period must apply. Because we believe that none of these claimants waited unreasonably long before asserting their claims, we find it unnecessary to ascertain how long the alternate period is.

**15.** See *supra* n. 10.

*Inda v. United Air Lines, Inc.,* 565 F.2d 554, 559 (9th Cir.1977), *cert. denied,* 435 U.S. 1007, 98 S.Ct. 1877, 56 L.Ed.2d 388 (1978); *see also* B. Schlei & P. Grossman, *Employment Discrimination Law* 1263 (2d ed. 1983). The statute is tolled even if the administrative charge was not filed on behalf of a class. *See Inda, supra.* The class representative's administrative complaint has that effect because when an employer acts in a way that affects an entire class in an identical manner, he cannot be heard to claim surprise over suits by the other employees. Because the individual administrative complaint should be adequate to give notice of the class-wide grievance, the purposes behind the time limitation are served by tolling the statute in that situation. *See Bowe v. Colgate-Palmolive Co.,* 416 F.2d 711, 719–20 (7th Cir.1969), *cited with approval in Albemarle,* 422 U.S. at 414 n. 8, 95 S.Ct. at 2370 n. 8.

In this case, the Secretary has similarly acted in a way that affects an entire class in an identical fashion. Certainly the Secretary should have known that terminations made pursuant to her policy of refusing to follow decisions of this court would be challenged by the large number of people adversely affected by that policy. As in the Title VII situation, the filing of an individual administrative complaint under such circumstances should suffice to give notice that a class-wide dispute is involved. The Secretary should not now be heard to express surprise at the number of people challenging her ruling. We thus conclude that there is a strong possibility that plaintiffs will succeed in their argument that, in a section 405(g) class action, the limitations period is deemed tolled retroactively for unnamed class members from the date a class representative first files an administrative appeal.

### B.   *Mandamus Jurisdiction.*

Plaintiffs argue that the federal mandamus statute provides an alternative basis for jurisdiction over this case. In considering the Secretary's motion for a stay pending appeal, we did not find it necessary to consider the availability of mandamus jurisdiction. When the Secretary sought a stay

in the Supreme Court, plaintiffs relied only on the grounds set forth in our decision. Thus, none of the opinions of the Justices of the Supreme Court considered the mandamus issue. Because plaintiffs properly rely on the mandamus statute as an alternative basis for jurisdiction, we consider the issue now.

The mandamus statute provides that

> [t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

28 U.S.C. § 1361 (1976). The Secretary argues that 42 U.S.C. § 405(h) precludes reliance on bases of jurisdiction other than 42 U.S.C. § 405(g). Section 405(h) reads, in relevant part, as follows:

> No action against the United States, the Secretary, or any officer or employee thereof shall be brought under sections 1331 or 1346 of title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h) (1976). Although the statute's language would appear not to preclude jurisdiction based on section 1361, the Secretary argues that the Supreme Court has held that jurisdiction over benefits claims may be based only on section 405(g). We disagree.

The cases cited by the Secretary all hold that section 405(g) precludes jurisdiction based on the general federal question statute, 28 U.S.C. § 1331 (1976 & Supp.1981). When presented with the argument that mandamus jurisdiction is similarly unavailable, the Court has consistently reserved the question. *See Eldridge,* 424 U.S. at 332 n. 12, 96 S.Ct. at 901 n. 12; *Norton v. Mathews,* 427 U.S. 524, 529–30, 96 S.Ct. 2771, 2774–75, 49 L.Ed.2d 672 (1976); *Califano v. Yamasaki,* 442 U.S. 682, 697–98, 99 S.Ct. 2545, 2555–56, 61 L.Ed.2d 176 (1979). We have held, however, that mandamus jurisdiction is available in cases challenging the procedures used in administering social security benefits. *See Ringer v. Schweiker,* 697 F.2d 1291 (9th Cir.1982), *cert. granted*

*sub nom. Heckler v. Ringer,* —— U.S. ——, 103 S.Ct. 3535, 77 L.Ed.2d 1386 (1983); *Daniel H. Freeman Memorial Hospital v. Schweiker,* 656 F.2d 473 (9th Cir.1981); *Knuckles v. Weinberger,* 511 F.2d 1221 (9th Cir.1975). In this regard, we are in accord with other circuits that have considered the question. *See Ellis v. Blum,* 643 F.2d 68 (2d Cir.1981); *Martinez v. Richardson,* 472 F.2d 1121 (10th Cir.1973). Our holding is also supported not only by the plain language of section 405(g), but also by Congress's failure, in amending other jurisdictional provisions, to express disapproval of the cases finding mandamus jurisdiction available under such circumstances. *See Ellis v. Blum,* 643 F.2d at 80.

▮▮▮ The mandamus statute gives the district courts jurisdiction to entertain "actions in the nature of mandamus." 28 U.S.C. § 1361 (1976). This requirement has been read to incorporate the common law requirements for granting mandamus, i.e., (1) that the plaintiff have a plain right to have the act performed, (2) that the defendant have a plain duty to perform it, and (3) that there be no other adequate remedy available to the plaintiff. *See Kennecott Copper Corp., Nevada Mines v. Costle,* 572 F.2d 1349, 1356 (9th Cir.1978); *see generally,* 1 J. Moore, J. Lucas, H. Fink, D. Weckstein & J. Wicker, *Moore's Federal Practice* ¶ 0.62[17] (2d ed. 1982). Here, the first two requirements are clearly satisfied: the Secretary's duty to perform the sought-after act was made plain in *Patti* and *Finnegan,* and, because all plaintiffs have had their benefits terminated as a result of the Secretary's failure to perform the act, each has a plain right to have the act performed. The only remaining question with respect to the availability of mandamus is whether plaintiffs have another adequate remedy. While we believe that it is likely that plaintiffs have an adequate remedy under section 405(g), our view is based on the assumption that the 60-day limitation on the filing of suits is inapplicable. If, however, the 60-day period does apply to each of the class members individually, we believe that, for the reasons previously discussed, the remedy would be inadequate and mandamus jurisdiction would be fully available as an alternative basis of jurisdiction.[16]

## III. SOVEREIGN IMMUNITY

The Secretary claims that the district court lacked authority to award the preliminary relief awarded here because she is shielded by sovereign immunity. She argues that "a court may not award monetary relief against the federal government absent a congressional enactment waiving the United States' sovereign immunity." She points out that the only statute authorizing payment of the type of benefits awarded here permits payment only upon a "final decision" by the Secretary or "final judgment" by a court that a person is "entitled" to benefits. 42 U.S.C. § 405(i) (1976). Because the requirements set out in the statute were not satisfied, she argues, the relief given was inappropriate.

▮▮▮ The Secretary's argument that the preliminary relief awarded here is inconsistent with the dictates of section 405(i) is without merit. Section 405(i) authorizes payment of benefits "[u]pon final decision of the Secretary or upon final judgment of any court of competent jurisdiction, that any person is entitled to" benefits. 42 U.S.C. § 405(i) (1976). Because each of the persons afforded relief by the preliminary injunction had been receiving benefits before the challenged action of the Secretary, each had received a "final decision" from the Secretary that he was "entitled to" benefits. Each is challenging the action of the Secretary revoking the earlier final decision. The district court's injunction merely instructs the Secretary to reinstate that earlier final decision pending determination of the validity of the revocation. The pay-

---

16. The Secretary does not question the timeliness of plaintiffs' assertion of mandamus jurisdiction. In any event, mandamus, like other equitable remedies, must be sought with "reasonable promptness." *See United States v. De-Loach,* 654 F.2d 763 (D.C.Cir.1980) (unexplained delay of four years precludes mandamus jurisdiction). All of the plaintiffs' claims were brought reasonably promptly given the nature of the claims asserted.

ments are thus indeed being made pursuant to a "final decision" of the Secretary.

The court's power preliminarily to reinstate that "final decision" by interdicting enforcement of the otherwise superseding later decision is plainly encompassed in the federal court's traditional equitable power to grant preliminary relief. It is hornbook law that "[t]he general purpose of a preliminary injunction is to preserve the status quo pending final determination of the action after a full hearing." 7 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 65.04[1] at 65–36 (2d ed. 1983). It is similarly well accepted that "[t]he status quo is the last uncontested status which preceded the pending controversy." *Westinghouse Electric Corp. v. Free Sewing Machine Co.,* 256 F.2d 806, 808 (7th Cir.1958); *see National Association of Letter Carriers v. Sombrotto,* 449 F.2d 915, 921, 924 (2d Cir.1971); *District 50, United Mine Workers of America v. International Union, United Mine Workers of America,* 412 F.2d 165, 168 (D.C.Cir. 1969); *Minnesota Mining and Manufacturing Co. v. Meter,* 385 F.2d 265, 273 (8th Cir.1967); *Tanner Motor Livery, Ltd. v. Avis, Inc.,* 316 F.2d 804, 809 (9th Cir.), *cert. denied,* 375 U.S. 821, 84 S.Ct. 59, 11 L.Ed.2d 55 (1963); *Warner Brothers Pictures, Inc. v. Gittone,* 110 F.2d 292, 293 (3d Cir.1940). A contrary rule would predicate a claimant's entitlement to preliminary relief on his having learned of the contested act sufficiently in advance to be able to file a lawsuit and seek a restraining order. It would also allow persons to shield themselves from equitable claims simply by presenting potential disputants with *faits accomplis.* Because section 405(i) evinces no congressional

intent to limit the traditional equitable power of the courts to grant preliminary relief if the moving party is likely to succeed on the merits and would suffer irreparable injury without the relief, we must conclude that the preliminary injunction granted here was a proper exercise of the district court's equitable discretion.[17]

■ The Secretary cites the recent enactment of an amendment to the Social Security Act, 42 U.S.C. § 1395, 96 Stat. 2497 (1983), as support for the proposition that the law did not authorize courts to award interim benefits pending adjudication of a section 405(g) claim to persons whose benefits were terminated before January 12, 1983. The Secretary argues that that amendment, entitling persons who are challenging termination of their benefits to continued benefits during their appeals, was designed to cure a defect that Congress perceived in prior law. That defect, the Secretary argues, was the absence of authority to award the type of benefits awarded here. Because the amendments apply only to persons whose benefits were terminated after January 12, 1983, she continues, the court was without authority to award the preliminary relief it awarded.

The Secretary's argument is flawed in two respects. First, the amendment she refers to applies not only to persons whose benefits were terminated after January 12, 1983, but also to persons whose benefits were terminated before that date and who have sought administrative review under section 221(d) of the Social Security Act. Because the administrative exhaustion requirement was waived in this case, this

---

**17.** Justice Rehnquist appeared troubled by the fact that, under the injunction, "the Secretary's obligation to pay is triggered merely by the recipient's statement in his application that, in his subjective belief, his medical condition has not improved since the earlier determination." *Heckler v. Lopez,* 104 S.Ct. at 14. We agree that a mere application for benefits would be an insufficient basis for a court order directing the payment of benefits. Here, however, the district court's power to order reinstatement of class members' benefits derives not from the application but from the Secretary's own final decision, which the district court has found likely to have been improperly revoked. As we

have already seen, the court's traditional equitable powers include the power preliminarily to interdict enforcement of the terminations, and thus to reinstate the benefits of *all* the class members, if the traditional requirements for preliminary relief are met. If the court could have reinstated the benefits of all class members, then the court's injunction can be no less valid because it granted that relief only to those who subsequently filed an application stating that they were still disabled. The application procedure outlined in the injunction thus serves as a limiting device, not as the source of the court's authority to order the resumption of benefits payments.

latter requirement should be deemed satisfied as well. More fundamentally, however, the amendments were not at all designed to address the problem of courts lacking power to grant preliminary relief. The amendment only entitles claimants to interim benefits pending *administrative* review. *See* 42 U.S.C. § 1395, 96 Stat. 2498 (1983). Congress's enactment of a law entitling claimants to interim benefits pending their administrative appeals does not in any way suggest that it believed courts lacked the power to reinstate benefits pending judicial review in cases otherwise satisfying the requirements for preliminary relief. To the contrary, it suggests that Congress believed that the existing scheme, which permitted judicial intervention only upon a "final decision" of the Secretary, left claimants challenging terminations without sufficient recourse during their administrative appeals.

■ Neither would sovereign immunity be a bar to the exercise of jurisdiction under the mandamus statute. In 1976, Congress amended section 702 of the Administrative Procedure Act to provide specifically that

[a]n action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702 (1982). That clearly constitutes a consent to be sued in cases such as this. Plaintiffs here were awarded preliminary injunctive relief, not damages. The district court made it clear that it was awarding only prospective relief; the preliminary injunction does not even order payment to the class members of the benefits that they will have failed to receive between the time they were terminated and the time the Secretary reinstates the benefits pursuant to the injunction. Although section 702 does go on to provide that "[n]othing herein ... confers authority to grant relief if any other statute that grants

consent to suit expressly or impliedly forbids the relief which is sought," *id.*, as we have seen, nothing in the Social Security Act forbids the type of equitable relief awarded here. Sovereign immunity thus presents no obstacle to the availability of mandamus as an alternative basis for jurisdiction.

## CONCLUSION

Because we see no basis for awarding relief to claimants who had received final decisions on their terminations before *Patti* and *Finnegan* were decided, we vacate the preliminary injunction granted by the district court insofar as it applies to *Finnegan*-type claimants who had received final decisions on their terminations before August 25, 1981, and *Patti*-type claimants who had received final decisions on their terminations before August 30, 1982. With regard to all remaining plaintiffs, however, we affirm the preliminary injunction. We conclude that section 405(g)'s presentation requirement was satisfied, and that it is likely (a) that section 405(g)'s exhaustion requirement was waivable, (b) that its 60-day limitation was probably inapplicable in this case, and (c) that, in any event, the limitation was tolled for most, if not all, class members. We also conclude that, if plaintiffs do not prevail under section 405(g), they will prevail under the mandamus statute. Finally, we conclude that the relief awarded was fully consistent with the requirements of section 405(i) and therefore not barred by sovereign immunity. *A fortiori*, therefore, we conclude that plaintiffs raise serious legal questions. Accordingly, we affirm the preliminary injunction, as modified above, in all respects.

AFFIRMED IN PART; REVERSED IN PART.

BOOCHEVER, Circuit Judge, concurring.

I concur generally in Judge Reinhardt's opinion and share his concern over the Secretary's refusal to obey the decisional law of this circuit. I cannot agree, however, that a substantial question is presented as to whether claimants who received termina-

tion notices from the Secretary more than sixty days prior to commencement of this class action and failed to seek any review are time-barred by the sixty-day limitation of § 405(g). The district court had no jurisdiction under § 405(g) over those claimants. *See Heckler v. Lopez,* —— U.S. ——, 104 S.Ct. 221, 223, 78 L.Ed.2d 217 (1983) (Stevens, J., concurring in part and dissenting in part).