**Ottie M. ROBERTS, Plaintiff,**

v.

**Richard S. SCHWEIKER, Defendant.**

**Civ. No. 4–82–946.**

United States District Court, D. Minnesota.

March 8, 1984.

---

**3.** See this court's memorandum opinion in *United States v. Henderson,* 584 F.Supp. 1037 (D.C. Pa.1984).

George H. Smith, Trawick & Smith, Minneapolis, Minn., for plaintiff.

James M. Rosenbaum, U.S. Atty. by Mary L. Egan, Asst. U.S. Atty., Minneapolis, Minn., for defendant.

## ORDER

MILES W. LORD, Chief Judge.

The plaintiff, Ottie M. Roberts, first applied for disability insurance benefits on January 19, 1981, alleging statutory disability since November 30, 1978. The Secretary of Health & Human Services (Secretary) denied the application initially and upon reconsideration. Ms. Roberts then requested a hearing which was held on February 4, 1982 before an Administrative Law Judge (ALJ). On April 19, 1982, the ALJ issued a decision denying benefits. When the Appeals Council denied benefits on June 21, 1982, their decision became the final decision of the Secretary.

Ms. Roberts brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the Secretary's decision denying benefits. Both parties moved for summary judgment. After review of the record as a whole, this court finds that there is not substantial evidence to support the Secretary's decision. Therefore, for the following reasons, the plaintiff's motion for summary judgment is granted.

The plaintiff was 51 years old at the time of the administrative hearing. Raised on a farm in Marion, Arkansas, she did not finish high school, but did obtain a GED from Community College in 1978. She is 5'1½" tall and weighs 136 pounds. From 1967 to 1978 she was a "packer" with Northwest Airlines Inc. This job involves cleaning airplanes and lifting drawers of soiled dishes weighing 60 to 80 pounds each. During this job, she was frequently bending over and reaching. In 1978, Ms. Roberts was put in the position of salad person and supervisor. As a salad person, a job she performed three days per week, she would cut meat for meals and move meat racks (about ten pounds each) back and forth to a work area for eight hours per day, in addition to supervising about 20 people.

Ms. Roberts sustained a series of five different back injuries while at work for Northwest Airlines, the first one on July 18, 1974, and the final most significant one on October 18, 1978. Since the later date, the plaintiff has not been able to return to her previous job with the airline.

The plaintiff has been treated by Drs. Thomas H. Johnson and Sidney K. Shapiro for the injuries she sustained while at work. Dr. Jerry T. Reese, who is an orthopedic specialist, examined the plaintiff on behalf of Northwest Airlines.

All of the above doctors agree Ms. Roberts is suffering from a herniated nucleus pulposa at the L5–S1 position in her spine, and a bulging disk at L4–L5. (Tr 112). This condition translates into constant pain in her left leg, and back pain which re-

stricts bending, lifting, sitting and twisting. (Tr 36, 42). Ms. Roberts' left leg collapses with strenuous activity, and there is numbness in her left arm, hand and large toe of her left foot. (Tr 36, 58, 59).

Although the plaintiff can cook light meals and do light housework, all heavy work and larger meals are done by her niece, who lives with her. (Tr 59). She does light shopping, but all loading and unloading of groceries is done by store employees and her niece. (Tr 60). The plaintiff cannot stand all day or sit all day. (Tr 61).

Ms. Roberts has been hospitalized five times. (Tr 54, 55, 56). Dr. Shapiro and Dr. Johnson have recommended surgery, but the plaintiff has been reluctant to submit to this, as she fears this may lead to more problems. (Tr 57, 58).

As a result of her injuries, the plaintiff is precluded from performing her past relevant work. (Tr 18). Although Northwest Airlines has attempted to place the plaintiff in a light duty position within the company, they could not do so because of the restrictions placed on the activities of the plaintiff. (Tr 148).

■ To meet the statutory requirements for disability, a claimant must show she has a medically determinable physical or mental impairment that will last at least twelve months and that renders her unable to engage in substantial gainful activity. The claimant bears the initial burden of proof to show that she cannot return to her former employment. *Davis v. Califano*, 605 F.2d 1067, 1071 (8th Cir.1979). Once the claimant has met this burden, the Secretary must establish that the claimant has the residual ability to perform other gainful activity in the national economy. *Stone v. Harris*, 657 F.2d 210, 211 (8th Cir.1981); *McCoy v. Schweiker*, 683 F.2d 1138 (8th Cir.1982). The Secretary may meet this burden by showing that a claimant falls into a "not disabled" category established by its regulations—the Medical-Vocational Guidelines (the grid) contained in Appendix 2 to subpart P of Part 404, 20 C.F.R. § 200.00 *et seq.* The factors involved in making this categorization are age, education, previous work experience, and "residual functional capacity" (RFC). RFC is defined as what a person can still do physically, even with an impairment. *McCoy v. Schweiker, supra*, 683 F.2d at 1142. The Secretary must establish a claimant's RFC by substantial evidence. *Id.* at 1146. The grid may not be applied if the Secretary fails to prove by substantial evidence that the claimant has the required RFC. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Yawitz v. Weinberger*, 498 F.2d 956, 959 (8th Cir. 1974).

■ The ALJ in this case found that Ms. Roberts could not return to her former employment. The burden then shifted to the Secretary to show that the claimant nonetheless had the ability to engage in other gainful activity. Here, the ALJ found that Ms. Roberts retained the residual functional capacity for "light work." Once he found Ms. Roberts could perform light work, the ALJ applied the grid and found no disability. The ALJ specifically held that plaintiff does not suffer from disabling pain.

■ The ALJ's decision was not properly reached in that he failed to evaluate plaintiff's complaints of pain under the correct rule of law. The ALJ erroneously concluded that plaintiff's condition "is not manifested by objective evidence of musculoskeletal or neurologic deficits which would support a condition capable of producing intractable pain." (Tr 15). It is well-established that there need be no cause and effect relationship shown between the objective medical evidence and the claimant's subjective complaints of pain. *Northcutt v. Califano*, 581 F.2d 164, 166 (8th Cir. 1978). While there must be some medical evidence of a physical or mental impairment, a claimant's subjective complaints of pain may not be rejected solely because there is a lack of objective medical evidence in support of such complaints. *Id.* at 166. The ALJ must give serious consideration to

subjective complaints of pain even though they may not be fully corroborated by objective examinations and tests. *Id.*

In *Lund v. Weinberger,* 520 F.2d 782 (8th Cir.1975), the court stated that a finding of disability may be made based on the claimant's subjective complaints of pain if the record does not contradict such claims. The record in this case shows a plaintiff with a developed, chronic back condition. She has two herniated discs that heavily restrict her movement. (Tr 159). In not one instance does this court find a report from the plaintiff's treating physicians which contradicts her complaints of pain.[1] All of the specific complaints, such as pain running down the left leg (via the sciatic nerve), numbness of the left arm, hand and big toe of the left foot, buckling of the left leg, problems with bending, stooping, twisting and lifting are wholly consistent with a herniated disc. Even Dr. Reese, who examined the plaintiff on behalf of the workman's compensation carrier did not contest the plaintiff's complaints of pain. From this it is clear that the ALJ did not correctly evaluate the plaintiff's complaints of pain.

■ Moreover, an ability to engage in substantial gainful employment must be something more than merely theoretical in nature. Plaintiff must be shown to possess capabilities necessary to engage in substantial gainful activity on a sustained and realistic basis. *Cole v. Harris,* 641 F.2d 613, 614 (8th Cir.1981); *Timmerman v. Weinberger,* 510 F.2d 439 (8th Cir.1975). The plaintiff in this case is a 51 year old woman with no transferable work skills. (Tr 18). Plaintiff's work history consists of only non-skilled heavy labor; there is no dispute that she cannot return to this work. While it is admitted that plaintiff is capable of doing light housework, some fishing, light cooking, etc. this does not begin to compare to the rigors of a 40-hour work week on a competitive basis. "The residual functional capacity that must be found—is

the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *Kirk v. Secretary of Health and Human Services,* 667 F.2d 524, 528–029 (6th Cir. 1981); *Simonson v. Schweiker,* 699 F.2d 426, 429 (8th Cir.1983); *McCoy v. Schweiker, supra,* 683 F.2d at 1147.

■ In summary, this court finds that the record fails to substantially support a finding that the plaintiff is capable of carrying on any kind of substantial gainful activity. The plaintiff's testimony and complaints of pain are all fully corroborated by the medical record. In at least three of the treating physicians' reports, the plaintiff was reported as "totally disabled for gainful employment." (Tr 154, 156, 158). Furthermore, surgery, which the plaintiff may be rightfully fearful of, was recommended as the only way for her to obtain any lasting relief—from pain. (Tr 159). While it is not the role of the physician to determine a point of law as to disability, nor is it up to this court to compel surgery. The record is clear that Ms. Roberts is in serious pain and that she is not able to engage in any type of gainful activity.

As a further note, this court is compelled to once again address two issues which have required attention time and time again in these appeals from the Social Security Administration. First, the case is once again presented where the ALJ has failed to clearly shift the burden of proof to the Secretary to show that plaintiff has the ability to perform gainful activity other than her former job. The law on this issue is more than clear and has been reiterated by the Eighth Circuit Court of Appeals on numerous occasions. *See, e.g., Jackson v. Schweiker,* 696 F.2d 630, 631 n. 1 (8th Cir.1983); *Tennant v. Schweiker,* 682 F.2d 707, 710 (8th Cir.1982). The ALJ in this case apparently rejected this rule in stating that "the claimant has not furnished proof

---

**1.** In *McCoy v. Schweiker, supra,* 683 F.2d at 1147, n. 8, the court indicates that little weight is given to consulting or non-treating physicians

as they do not see the patient frequently enough to establish credibility.

of the existence of a physical or mental impairment, or combination of impairments ... which have precluded [her] from engaging in 'any substantial gainful activity.'" (Tr 18). Obviously, this standard is inappropriate and contrary to the established rule of law governing these cases.

In addition, the ALJ improperly applied the Medical Vocational Guidelines (grids) referred to earlier in this opinion. The grids are predicated on a claimant's exertional impairments or *physical* capacity for work. *Tucker v. Schweiker*, 689 F.2d 777, 781 (8th Cir.1981); *Nicks v. Schweiker*, 696 F.2d 633, 636 (8th Cir.1983). If a claimant is suffering from a nonexertional impairment, such as severe pain, the Secretary cannot employ the grids but must introduce vocational expert testimony on the question of whether plaintiff is capable of gainful activity. *Tucker v. Schweiker*, *supra*, 689 F.2d at 780; *McCoy v. Schweiker*, *supra*, 683 F.2d at 1148. Plaintiff's claim of disability stems primarily from the severe pain she suffers as the result of her back condition. The grid is clearly inapplicable in this case for that reason.

Although a remand would be appropriate in some cases because of these defects in the record, this court finds it unnecessary to do so in this case. The evidence concerning plaintiff's impairments and her inability to perform gainful activity is conclusive in the record taken as a whole. All evidence of record, including the medical reports submitted by examining physicians and the testimony concerning her lifestyle, is consistent with her complaints of pain. This court need look no further. A remand in this case would serve only to delay the receipt of benefits. *See Tennant v. Schweiker*, 682 F.2d 707, 710 (8th Cir.1982).

Accordingly, the decision of the Secretary denying benefits is reversed, plaintiff's motion for summary judgment is granted, and the matter remanded to the Secretary for a determination of the amount of benefits accrued.

IT IS SO ORDERED.