Lorraine POLASKI, et al., Plaintiffs,

v.

Margaret M. HECKLER, Secretary of
the Department of Health and
Human Services, Defendant.

Civ. 4–84–64.

United States District Court,
D. Minnesota,
Fourth Division.

April 27, 1984.

See also D.C., 585 F.Supp. 997.

Mary G. Grau, Legal Aid Society of Minneapolis, Minneapolis, Minn., for plaintiffs.

James M. Rosenbaum, U.S. Atty. by Paul W. Day, Asst. U.S. Atty., Minneapolis, Minn., for defendant.

## ORDER

MILES W. LORD, Chief Judge.

### INTRODUCTION

Plaintiffs in this class-action suit against the Secretary of Health and Human Services (Secretary) seek a preliminary injunction which would, in essence, compel the government to use the proper standards in evaluating claims for disability insurance benefits under Titles II and XVI of the Social Security Act. After a hearing on April 17, 1984, this court certified a class and issued a temporary restraining order to freeze the situation pending further review. A second hearing was held on April 26, 1984, to consider whether a preliminary injunction should issue and, if so, what preliminary relief would be appropriate. The present order is based upon the evidence presented at those hearings and the extensive briefs submitted by the parties.

For several years now, the courts of this circuit have found themselves embroiled in an increasingly frustrating effort to persuade the Secretary to follow their decisions regarding certain legal standards under the disability insurance program. The Secretary, in an apparent effort to reduce the number of disability beneficiaries, has taken a more restrictive approach in recent years in determining eligibility. Often, the Secretary has stuck to this restrictive path even when it has led to direct contravention of federal court edicts. By proceeding in such a manner, the Secretary also has disregarded the fundamental policies at the heart of the disability program:

> Congress enacted the social security disability insurance program in order to provide benefits to individuals who become disabled and can no longer "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." The program is intended to aid workers who, after having contributed to the nation's workforce, are unable to continue to do so because of a disability. The underlying purpose of this program is to ease the economic dislocations and hardships that often accompany disability. The Act is a remedial one which should be broadly construed and liberally applied to effectuate its humanitarian goals.

Judge Gerald W. Heaney, *Why the High Rate of Reversals in Social Security Disability Cases?*, 7 Hamline Law Review 1, 2 (1984) (footnotes omitted).

In the present action, plaintiffs challenge two specific policies of the Secretary: (1) the agency policy of requiring objective medical evidence to *fully corroborate all* allegations of pain and other subjective complaints, and (2) the agency policy of terminating disability benefits without *new evidence* showing that the claimant's medical condition has improved or that the prior decision was erroneous. Plaintiffs contend that these policies violate the Social Security Act as well as the separation of powers doctrine and due process rights under the U.S. Constitution.

### JURISDICTION

■ At the threshold, the Secretary argues that this court lacks the jurisdiction to consider this action. The Secretary's extended arguments along this line, however, ignore principles that have by now become well-established in actions .of this nature. *See, e.g., Mental Health Association of*

*Minnesota v. Heckler,* 720 F.2d 965, 968–71 (8th Cir.1983). This court therefore concludes that it has jurisdiction over all members of this class by virtue of both section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), and the mandamus statute, 28 U.S.C. § 1361.

█ Jurisdiction under section 205(g) imposes two requirements. The first mandates that the individual present a claim to the Secretary, which all members of this class clearly have done. The second requires that the individual exhaust his administrative remedies and receive a final decision from the Secretary before seeking relief in the courts. It is true that some members of this class have not yet proceeded through all levels of agency appeals. This second requirement is, however, waivable by either the Secretary or the courts when necessary to prevent irreparable harm or the loss of crucial collateral claims. *Mathews v. Diaz,* 426 U.S. 67, 75–77, 96 S.Ct. 1883, 1889–1890, 48 L.Ed.2d 478 (1976); *Mathews v. Eldridge,* 424 U.S. 319, 331 n. 11, 96 S.Ct. 893, 900 n. 11, 47 L.Ed.2d 18 (1976).

This court finds that such a waiver is appropriate in the present case. As set out in detail below, this class of plaintiffs will suffer irreparable harm if its claims are not acted upon immediately. This class does not have the resources to endure delay upon delay; the members of this class depend upon disability benefits to meet the most basic of their needs, to sustain their health and well-being. Further, it would be futile and inefficient to force these plaintiffs to pursue their claims through level after level of agency review when it appears that the agency is systematically relying upon improper standards. *Mental Health Association of Minnesota,* 720 F.2d at 970–71.

█ As for mandamus jurisdiction, it is well established that courts will assert such jurisdiction when no other adequate remedy is available and the plaintiff is owed a

clear duty. *United States ex rel. Girard Trust Co. v. Helvering,* 301 U.S. 540, 543–44, 57 S.Ct. 855, 857, 81 L.Ed. 272 (1937). Such is the situation in the present action, in which a writ of mandamus would not supplant the Secretary's duly delegated authority to make the factual determinations upon which eligibility depends but would merely compel the Secretary to make such determinations in a lawful manner. *Mental Health Association of Minnesota,* 720 F.2d at 971–72 n. 17.

## REVISED CLASS CERTIFICATION

█ Plaintiffs move for a revised class certification, apparently on the basis of newly-acquired information on the status of various class actions which have been filed but not yet certified throughout the Eighth Circuit's jurisdiction. The class as originally certified in this court's order of April 17 was defined to include disability claimants within the Eighth Circuit who have viable claims regarding the Secretary's standards on pain and medical improvement but whose claims are not already being dealt with in some other collective action.

Thus, the original certification excluded residents of Arkansas because that state had had some success on its own in convincing the agency to follow the law of the Eighth Circuit and had imposed its own moratorium on terminations under improper standards. This court is now advised, however, that the Secretary's acquiescence and the state's moratorium came as recently as December 1983. The proper standards therefore have never been applied to some applicants whose claims are still viable. Certainly, these individuals should be included in the class.

The original certification also was too narrow in that it failed to encompass individuals in Arkansas and Iowa for whom the statute of limitations had been tolled by the filing of class actions in their respective states.[1] *American Pipe and Construc-*

---

**1.** These putative class actions are: *Wilson v. Heckler,* LR–C–83–338 (D.Ark.1984); *Myers v.* *Ross, et al.,* Civ. No. 82–170–B (D.Iowa 1982), and *Bradley v. Hecker,* No. 2c–84–3010 (D.Iowa

*tion Co. v. State of Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). This court finds that the class appropriately encompasses these individuals.

Accordingly, this court orders that the class be redefined as follows:

All persons residing in Minnesota, North Dakota, South Dakota, Missouri, Nebraska, Iowa, or Arkansas,

a) who have been or will be notified that their applications for Title II and/or Title XVI benefits have been denied or that their Title II and/or Title XVI benefits are being terminated on medical or medical vocational grounds; and

b) who allege that they are unable to work in whole or in part because of pain or other subjective complaints and/or that their medical condition has not improved; and

c) who are pursuing or will pursue timely administrative or judicial appeals, or, if not pursuing timely appeals, who have received or will receive an adverse decision at any level of the administrative review process on or after January 30, 1984, provided however that,

(1) as to those who are residents of Arkansas and who have been or will be notified that their applications for Title II and/or Title XVI benefits have been denied, the class includes only (a) those who are pursuing or will pursue timely judicial appeals and (b) those who are pursuing timely administrative appeals at the Administrative Law Judge or Appeals Council level, and (c) those who received or will receive an adverse decision at the Administrative Law Judge or Appeals Council level on or after February 20, 1984;

(2) as to those who are residents of Arkansas and who have been terminated from Title II and/or Title XVI benefits, the class also includes those who have received or will receive an adverse decision at any level of the administrative review process on or after February 12, 1983; and

(3) as to those who are residents of Iowa and who have been or will be notified that their applications for Title II and/or Title XVI benefits have been denied, the class also includes those who have received an adverse decision at any level of the administrative review process on or after November 26, 1983; and

(4) as to those who are residents of Iowa and who have been or will be terminated from Title II and/or Title XVI benefits, the class also includes those who have received or will receive an adverse decision at any level of the administrative review process on or after January 13, 1982,

d) provided, further, however, that the class of persons whom plaintiffs represent shall exclude persons who are members of class actions which have been certified in any court in the Eighth Circuit which challenge the Secretary's policy with regard to a medical improvement standard or the evaluation of pain and other subjective complaints; provided that such persons shall be excluded from this class only with regard to the issue or issues actually being litigated in such other certified class actions.

### PRELIMINARY INJUNCTION

 The Eighth Circuit has set out a four-part test to govern the issuance of preliminary injunctions. In short, this test involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Dataphase Systems, Inc. v. C L Systems, Inc.,* 640 F.2d 109, 114 (8th Cir.1981). In applying these factors, courts are advised to use a flexible and equitable approach:

... [T]he question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits

1984). Class certification is still pending in

each of these suits.

are determined. The equitable nature of the proceeding mandates that the court's approach be flexible enough to encompass the particular circumstances of each case.

*Id.* at 113.

This court turns first to a consideration of the probability of plaintiffs succeeding on the merits of their action.

*The Pain Standard*

Plaintiffs argue that the Secretary is systematically applying an erroneous standard in evaluating complaints of pain. Numerous decisions of the Eighth Circuit, cited by plaintiffs, hold that subjective complaints of pain must be given serious consideration, even when not fully corroborated by objective medical evidence. *See, e.g., Brand v. Secy of Dept. of Health, Etc.,* 623 F.2d 523 (8th Cir.1980); *Cole v. Harris,* 641 F.2d 613 (8th Cir.1981); *Tucker v. Schweiker,* 689 F.2d 777 (8th Cir.1982); *Simonson v. Schweiker,* 699 F.2d 426 (8th Cir.1983); *Nelson v. Heckler,* 712 F.2d 346 (8th Cir. 1983); *Hillhouse v. Harris,* 715 F.2d 428 (8th Cir.1983).[2] Under these decisions, all that is required is that there be medical evidence of a mental or physical impairment. Once that is established, the claimant need not show a direct cause and effect relationship between his condition and the level of pain that he suffers:

> Of course, under the Act, there must be medical evidence of physical or mental impairment. Disregard of a claimant's subjective complaints of pain, however, is not justified solely because there exists no objective evidence in support of such complaint.

*Northcutt v. Califano,* 581 F.2d 164, 166 (8th Cir.1978) (footnote omitted); *Brand v. Secy. of Dept. of Health, Etc.,* 623 F.2d at 526.

To require that the medical evidence fully supports the individual's complaints of pain ignores the reality that each person is different in the way that he deals with his particular impairment:

> These claimants are real people and entitled to have their disabilities measured in terms of their total physiological well-being. Different people react in markedly different ways to similar injuries. A back condition may affect one individual in an inconsequential way, whereas the same condition may severely disable another person who has greater sensitivity to pain or whose physical condition, due to age, obesity, deformity, or general physical well-being is generally deteriorated.

*Landess v. Weinberger,* 490 F.2d 1187, 1190 (8th Cir.1974).

The Secretary argues that the pain standard enunciated by the Court of Appeals is indeed being followed. She contends that there is no systemwide policy ignoring the law of this circuit, but rather only erroneous results in certain isolated cases.

The evidence against the Secretary's argument is overwhelming. The court first turns to the very decisions of the Eighth Circuit defining the proper standard, which the Secretary argues are "isolated cases":

> For some unexplained reason, the Secretary insists upon ignoring this Court's statements with respect to the proper evaluation of pain. The Secretary must give consideration to subjective complaints of pain and not disregard them solely because they are not fully corroborated by the objective medical evidence.

*Nelson v. Heckler,* 712 F.2d at 348.

The Eighth Circuit again confronted the continuing problem of the Secretary applying an improper pain standard in the case of *Hillhouse v. Harris, supra.* In quoting from the lower court opinion, the Eighth Circuit warned the Secretary that it con-

---

**2.** This list is by no means exhaustive. In total, plaintiffs refer this court to nineteen Eighth Circuit opinions with similar holdings on the issue of pain. In addition, this list does not include the numerous decisions of the district courts which also direct the Secretary to give serious consideration to complaints of pain whether or not such complaints are fully corroborated by the medical evidence. *See, e.g., Roberts v. Schweiker,* 583 F.Supp. 724 (D.Minn. 1984); *Fenus v. Schweiker,* 584 F.Supp. 45 (D.Minn.1983).

sidered her refusal to apply the proper pain standard as a violation of law:

> The result of this individual case should not obscure the fact that the regulations of HHS are not the supreme law of the land. 'It is emphatically the province and duty of the judicial department, to say what the law is,' *Marbury v. Madison,* 1 Cranch 137, 117, 2 L.Ed. 60 (1804); and the Secretary will ignore that principle at his peril.

715 F.2d at 430.

Commenting separately in *Hillhouse,* Judge McMillian further warned the Secretary of the consequences of her policy of nonacquiescence:

> While I concur wholly in everything said in the majority opinion, I think more is needed to be expressed. I have no wish to invite confrontation with the Secretary. Yet, if the Secretary persists in pursuing her nonacquiescence in this circuit's decisions, I will seek to bring contempt proceedings against the Secretary both in her official and individual capacities.

*Id.* at 430.

The Secretary contends that her regulations strictly comply with the Eighth Circuit's rulings on pain. Specifically, the Secretary points to the following:

> *How we evaluate symptoms, including pain.* If you have a physical or mental impairment, you may have symptoms (like pain, shortness of breath, weakness or nervousness). We consider all your symptoms, including pain, and the extent to which signs and laboratory findings confirm these symptoms. The effects of all your symptoms, including severe and prolonged pain, must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptom. We will never find that you are disabled based on your symptoms, including pain, *unless medical signs or findings show that there is a medical condition that could be reason-*

*ably expected to produce those symptoms.*

20 C.F.R. § 404.1529 (emphasis added).

This regulation, contrary to the Secretary's contention, does not meet the standard declared by the Eighth Circuit for evaluating complaints of pain. The Secretary's regulation clearly requires that the individual claimant show sufficient objective proof of his subjective complaints in order to receive benefits. The cases of this circuit emphatically direct the Secretary to carefully evaluate an individual's complaints of pain, *regardless of whether or not those subjective complaints are supported by medical evidence.* Rather than adopt this standard, the Secretary has declared that symptoms of pain themselves must be objectively verified by medical evidence. In her regulation, the Secretary requires the individual claimant to draw a direct connection between his condition and the pain he suffers by showing that he is impaired by a "medical condition that could be *reasonably expected to produce those symptoms.*"

Eighth Circuit Law interpreting the Social Security Act explicitly states that such a connection need not be established. Whether or not the claimant's impairment should or should not produce disabling pain is simply not dispositive of the issue surrounding whether the claimant actually suffers from disabling pain. By requiring even a "reasonable" connection between the impairment and the claimant's symptoms of pain, the Secretary introduces into the evaluation an erroneous objective medical standard not required under the law. Individual applicants must be taken as they are, complete with what may be their peculiar sensitivities to the pain which afflicts them.

Even if this court were to ignore a common sense reading of the Secretary's regulation, it would have to conclude that the Secretary is in fact applying her regulation in a manner contrary to Eighth Circuit law. Under Social Security Ruling 82–58,[3] the

---

**3.** Social Security Rulings are essentially policy statements issued by the Commissioner of Social Security.

Secretary has made it even clearer that subjective complaints of pain will not be seriously considered unless established by objective medical evidence:

> Once ... a medical condition (e.g. disc disease) is objectively established, the symptoms are still not controlling for purposes of evaluating disability. Clinical and laboratory data and well-documented medical history must establish findings which may reasonably account for the symptom in a particular impairment. Objective clinical findings which can be used to draw reasonable conclusions about the validity of the intensity and persistence of the symptom and about its effect on the individual's work capacity must be present. For example, in cases of back pain associated with disc disease, typical associated findings are muscle spasm, sensory loss, motor loss, and atrophy. *There must be an objective basis to support the overall evaluation of impairment severity.* (emphasis added).

Furthermore, in recent decisions the Secretary's Appeals Council has directly refused to follow the proper pain standard, even when specifically ordered to do so by a federal district court. In *Nickels v. Schweiker*, No. 82–0265–CV–W–8 Slip op. (W.D.Mo. June 11, 1983), the district court found that the Secretary had failed to give sufficient consideration to plaintiff's subjective complaints of pain. The court then remanded the matter for further agency action, explicitly instructing the Secretary that she could not ignore subjective complaints of pain, "even if not supported by objective evidence." *Id.* at 13. When the matter reached the Appeals Council,[4] the Council decided to remand the case to an ALJ for further proceedings. On remand, the Council instructed the ALJ to follow "the procedures described in the Court's order of remand." However, the Appeals Council continued:

> [T]he administrative law judge is reminded that Social Security Administration Regulations 404.1529 and 426.929 and Ruling 82–58 direct that pain is a symptom, not an impairment.... A finding of disabled, therefore, must not be based on symptoms unless medical signs or findings show that there is a severe medical condition which could be reasonably expected to produce the symptoms and the degree of symptomatology alleged.

Likewise, the order of the district court was not followed in *Devore v. Heckler*, No. C 83–2040 (N.D.Ia. November 22, 1983). There, the district court ruled that "an ALJ may disbelieve a claimant's complaints of pain because of inherent inconsistencies or other circumstances, but not solely because they cannot show the exact physiological source of the pain." *Id.* at 3. The court then remanded the matter for further proceedings before the Secretary. The Appeals Council again remanded to an ALJ for further hearing, noting that the ALJ should follow the directions of the district court. The Appeals Council again, however, cited the ALJ to the Secretary's own erroneous regulations and rulings regarding pain, concluding that a disability "must not be based on symptoms unless medical signs or findings show that there is a severe medical condition which could be reasonably expected to produce the symptoms *and the degree of symptomology alleged.*"

Judge Heaney of the Eighth Circuit recently wrote of the Secretary's policy of disregarding the law of the courts:

> The SSA apparently has directed that decisions of both the district court and the courts of appeals should be ignored in deciding whether to grant or deny benefits to individual claimants. A memo to all ALJs dated January 7, 1982, from the Associate Commissioner of the Office of Hearings and Appeals, is typical of the Secretary's approach. The memo emphasized that the Deputy As-

---

**4.** The first step in the remand process from district court is to the Appeals Council. The Council may at that point either act upon the matter itself, or refer the case to an ALJ for further findings.

sistant General Counsel "stressed the point that the federal courts do not run SSA's programs, and that the ALJs are responsible for applying the Secretary's policies and guidelines *regardless of court decisions below the level of the Supreme Court.*"

Heaney, *Why the High Rate of Reversals in Social Security Disability Cases?*, 7 Hamline Law Review 1, 9 (1984).

Thus, the Secretary apparently has decided to obey only the edicts of the U.S. Supreme Court. At the same time, however, the Secretary refuses to appeal adverse rulings to the Supreme Court, thus depriving the Court of the opportunity to issue opinions on disputed issues and eliminating the Secretary's risk of being bound by a decision of the highest court in the land. Instead, the Secretary merely follows the ruling as to the individual claimant whose case was before a lower court, while ignoring general precedents set out by such courts. The Secretary therefore faces reversal on a case-by-case basis, but sees nothing to prevent her from ruling as she chooses in subsequent cases.

In her motion papers before this court, the Secretary even admits to her general policy of ignoring federal court decisions, while arguing simultaneously that she is following the law of this circuit:

> [C]onsiderations of inter-branch comity suggest that the Secretary should decline to follow court of appeals opinions only after *due and respectful consideration of such opinions.*

Defendant's Memorandum in Opposition to Plaintiff's Motions for Temporary Restraining Order and Preliminary Injunction, p. 14 n. 10.

**5.** The Secretary argues that she has not adopted a policy of nonacquiesence in this case because she has not issued a formal ruling nonacquiescing in the orders of this circuit. The Secretary did in fact issue such a ruling regarding the Ninth Circuit's decision that the Secretary must follow the medical improvement standard in termination cases. *See Lopez v. Heckler*, 725 F.2d 1489 (9th Cir.1984). This court finds such a distinction to be meaningless. Whether or not a formal ruling has been issued is irrelevant;

Whether it be out of due and respectful consideration or bad faith, the Secretary has nonetheless breached her duties under the Social Security Act and the U.S. Constitution by not following the law of this circuit. By implementing her policy of nonacquiesence, whether it be by formal ruling or otherwise,[5] the Secretary impairs the right of each individual to a proper consideration of his subjective complaints, including pain.

For these reasons, this court preliminarily concludes that the Secretary has applied an erroneous pain standard on a systemwide basis, violating the Social Security Act, the due process clause of the Fifth Amendment and the constitutional doctrine of the separation of powers. Plaintiffs have more than sustained their burden of showing a likelihood of success on the merits on this issue.

### The Medical Improvement Standard

Plaintiffs further argue that the Secretary has applied an erroneous standard when terminating benefits for individuals who had once been declared by the Secretary to be disabled. Plaintiffs claim that the Secretary is required under the Social Security Act to employ a "medical improvement standard", which would require the Secretary to show that an individual's medical condition has materially improved, or that there was a clear error in the initial decision, before terminating benefits. The Secretary presently adheres to a "current disability" standard, which allows the Secretary to merely look at the present evidence of disability and make a new determination of whether or not an individual's disability has ceased.[6]

The Secretary's "current disability" standard has been overwhelmingly rejected by

the Secretary's policy of ignoring federal court decisions remains alive.

**6.** The Secretary argues that at least in some cases "new" medical evidence is gathered in determining whether an individual's disability has ceased. Even if this is true in some cases, the Secretary still refuses to follow the medical improvement standard urged by plaintiffs to be the proper one.

the courts. *See, e.g., Patti v. Schweiker,* 669 F.2d 582 (9th Cir.1982); *Dotson v. Schweiker,* 719 F.2d 80 (4th Cir.1983); *Kuzmin v. Schweiker,* 714 F.2d 1233 (3rd Cir.1983); *Simpson v. Schweiker,* 691 F.2d 966 (11th Cir.1982); *Weber v. Harris,* 640 F.2d 176 (8th Cir.1981); *Graham v. Heckler,* 573 F.Supp. 1573 (W.Va.1983); *Hyatt v. Heckler,* 579 F.Supp. 985 (N.C.1984); *Doe v. Heckler,* 576 F.Supp. 463 (Md.1983).

There is no doubt that under the Social Security Act, the claimant "bears a continuing burden of showing ... that he has a physical or mental impairment," and that "[i]n order to remain eligible for benefits [he] must demonstrate that he is [disabled]." *Mathews v. Eldridge,* 424 U.S. 319, 336 and 343, 96 S.Ct. 893, 903 and 907, 47 L.Ed.2d 18 (1976). This rule does not prohibit, however, a presumption that an individual once disabled remains disabled absent proof that his condition has changed. *See Patti v. Schweiker, supra.* In *Patti,* the Ninth Circuit explained the reasoning for such a presumption in these cases:

> [A] prior ruling of disability can give rise to a presumption that the disability still exists. "Once evidence has been presented which supports a finding that a given condition exists, it is presumed in the absence of proof to the contrary that the condition has remained unchanged." *Rivas v. Weinberger,* 475 F.2d 255, 258 (5th Cir.1973). A presumption ... impose[s] "on the party against whom it is directed the burden of going forward with the evidence to rebut or meet the presumption." Fed.R.Evid. 301.
>
> The Secretary's own regulations provide that the decision of an ALJ on a disability question becomes binding "on all parties to the hearing" if none of the specific avenues of review are exercised by the claimant or the Secretary. 20 C.F.R. § 416.1455 (1981).

669 F.2d at 586.

The Secretary's own regulations require that a final decision on the issue of disability is binding on both parties. The resulting presumption of continuing disability only requires the Secretary to come forward with evidence that the individual's condition has improved, and does not shift the ultimate burden of proof to the Secretary.

The difference between the medical improvement and current disabilities standards is of great importance to individual claimants. In *Lopez v. Heckler, supra,* the Ninth Circuit directed the Secretary to apply the medical improvement standard on a class-wide basis. Subsequently, the agency began a review of the cases of those individuals whose benefits had been terminated under the Secretary's improper current disability standard. Of these individuals, 73% were found to be disabled under this new and proper standard. In addition, the termination rate in Oregon, covered by the *Lopez* decision, has been reduced to only 12.3% compared to the national average of 45.2%. Affidavit of Elena H. Ackel, attorney in the *Lopez* case.

The Secretary argues that the medical improvement standard is too broad, and will allow individuals to remain on the rolls whose situation has improved due to new medical technology or drug treatment, but whose actual medical condition has remained unchanged. Clearly, the effect that such technology or treatment might have on the individual could be taken into account in considering whether a person's medical condition has materially improved. New technology or treatment may in many cases alleviate the individual's impairment to the point that it is no longer disabling.

The Secretary's arguments along these lines confirm plaintiffs' position that the current standard in termination cases is not designed to merely take those *individuals off the rolls who can now work.* Rather, it has become clear that the Secretary's intentions have been to simply cut down the number of people receiving benefits.[7] This

---

7. This court takes note that the ALJs themselves have filed suit in federal court to stop the Secretary from applying pressure to trim the disabili-

ty rolls. *Association of Administrative Law Judges Inc. v. Schweiker,* Civil No. 83–01244 (D.D.C. filed Jan. 19, 1983).

policy has been carried out at the expense of many people who have been previously found to be disabled and depend upon benefits for their daily needs. While the Secretary has been directed by Congress to carry out a disability review program, it has been carried out in a manner clearly contrary to law.

For these reasons, this court finds plaintiffs have shown substantial likelihood of success on the merits of their claims on this issue.

### Irreparable Harm

The irreparable harm likely to befall plaintiffs if this preliminary injunction is not granted is immense. It is hard to envision a more urgent situation. Claimants who lose or are denied benefits face foreclosure proceedings on their homes, suffer utility cutoffs and find it difficult to purchase food. They go without medication and doctors' care; they lose their medical insurance. They become increasingly anxious, depressed, despairing—all of which aggravates their medical conditions. They begin to think of suicide. They even die from the very disabilities the agency denies they have.

The following excerpts from plaintiffs' affidavits detail their compelling plight:

Because I was not able to meet my utility costs in the winter of 82/83 my natural gas was shut off in May of 1983. Gas not only heats my house but also is the fuel needed for my cooking stove. I live in an older home with poor insulation and the house was quite chilly after the heat was turned off which aggravated the pain in my bones. I had only an electric hot plate to use for cooking ... Many months I have had no money to pay for doctor's visits, prescription drugs or even over-the-counter pain relievers ... Especially in the last year I have felt a great sense of isolation and frustration and have experienced moments of despair and wonderment at the futility of going on.

Affidavit of Harriet A. Miller, 61, Mora, Minn., suffering from spinal osteoporosis and arthritis.

I cannot work because I suffer constant and severe pain, as a result of my degenerative disc disease ... Our family has no medical coverage at this time ... If a disc in my back were to slip out again—as had happened on six occasions while I was on disability benefits and Medicare—I would be fully responsible for the hospital bill, which would inevitably amount to several thousand dollars ... These financial difficulties, the prospect of seeing my life savings dwindle away, the constant severe pain, have caused me and my family considerable anxiety and distress. I have suffered, and continue to suffer from a prolonged depression as diagnosed by my psychiatrist. The loss of my income has created problems between me and my wife and has damaged our married life.

Affidavit of Donald Eugene Foster, 59, Maplewood, Minn., truck driver for 36 years.

I cannot work because of severe and constant pain in my back, due to arthritis and degenerative disc disease ... The pain is so severe on some days that I cannot even get out of bed ... Our house has twice gone into foreclosure proceedings and I have had to borrow from friends and relatives to save it.

Affidavit of George Hinrichs, 43, Minneapolis, Minn., Western Electric employee for 21 years.

My doctor told me to avoid stress, because otherwise I'd be more likely to have another heart attack. How can I avoid stress when I can't pay my bills or buy food for my family?

Affidavit of Arthur Gottsch, 43.

My father was originally found to be disabled ... in January of 1975 ... He continued to receive disability benefits until August of 1981, when his benefits were terminated. This occurred despite the fact that his problems with his eyesight seemed to have worsened, and he had also developed hypertension. He appealed the termination and he had a hearing before an Administrative Law Judge on April 15, 1982. The day after the hearing my father suffered a severe

heart attack and was hospitalized in a coma. He died, without having regained consciousness, on June 2, 1982. In the meantime, having been notified of my father's condition, the Administrative Law Judge issued a favorable decision on May 20, 1982. Although I cannot draw a direct connection between my father's death and the loss of his Social Security benefits, such loss clearly did cause him additional strain and anguish, and it certainly was unjustified in light of the fact that his condition had worsened, not changed for the better. I state these things in the hope that it may help others avoid similar hardship and loss.

Affidavit of Kim Ringold, daughter of Jack Jesperson, deceased.

This undeniable harm to plaintiffs convinces this court that the public interest demands immediate relief. This harm to plaintiffs also far outweighs any injury the Secretary might suffer as a result of the injunction. The Secretary points to bureaucratic woes and inconveniences in administering this order, but this cannot begin to compare with the health and welfare interests of the plaintiffs. The Secretary's alleged and speculative troubles pale even further in view of the fact that it was her own actions which brought the disability program to this juncture of crisis. Justice is only now catching up with her.

In sum, this court finds that plaintiffs have met all of the requirements for a preliminary injunction and now takes on the task of defining the terms of relief appropriate at this stage.

This court is fully cognizant of the deference that must ordinarily be displayed toward the Secretary when acting within her administrative domain. At the same time, however, this court recognizes its duty to fashion equitable relief commensurate to the harm plaintiffs face. *Califano v. Yamasaki*, 442 U.S. 682, 704, 99 S.Ct. 2545, 2559, 61 L.Ed.2d 176 (1979).

The present circumstances mandate two types of preliminary relief. First, the Secretary must be ordered to employ the proper standards for pain and medical improvement. Second, class members whose benefits have been terminated must be entitled to have their benefits reinstated immediately pending a proper review of their cases, and class members whose initial applications for benefits have been denied under improper standards must be entitled to receive an expedited review of their claims.

Other courts facing similar situations involving the Secretary also have found it necessary to award reinstated benefits to terminated disability claimants. *See, e.g., Mental Health Association of Minnesota v. Heckler*, 720 F.2d 965 (8th Cir.1983); *Lopez v. Heckler*, 725 F.2d 1489 (9th Cir. 1984). *Mental Health Association of Minnesota* involved a class-action challenge of the Secretary's procedures for evaluating disability claims of the severely mentally ill. The district court concluded that the plaintiffs were likely to prevail on the merits at trial and ordered the reinstatement of benefits. The Eighth Circuit affirmed, finding that the scope of the order was within the district court's jurisdiction:

> The district court merely reinstates certain plaintiffs to their former position; it does not extend a new benefit to those plaintiffs who merely had applied for benefits ... The resultant order of reinstatement of benefits pending a proper adjudication is a restoration of the status quo.

*Mental Health Association of Minnesota*, 720 F.2d at 972–73.

Similarly, the present reinstatement order 'is merely a limited form of relief intended to preserve the status quo of terminated recipients. It does not pronounce that these class members will perpetually receive disability benefits, but only insists that benefits be paid until the Secretary properly reviews each claim on a case-by-case basis. Should the claimant ultimately be found ineligible, benefits paid out pursuant to the terms of the injunction could be recovered by the Secretary under the standard overpayment procedures of the Social Security Act. This order also does not provide to terminated claimants the past-due benefits which they may ultimately be

entitled to. There is not the same urgency accompanying the award of past-due benefits as there is with reinstatement of current benefits, upon which plaintiffs rely for daily survival. Thus, back benefits will not be awarded until the Secretary evaluates and finds a continuing disability for each claimant or until this controversy is fully litigated.

The reasonableness of this reinstatement remedy is underscored by a recent action by the Secretary herself. On April 13, 1984, the Secretary announced a moratorium on certain terminations and, accompanying the moratorium, the reinstatement of benefits to some categories of terminated recipients. This indicates that the Secretary recognizes the harm suffered by persons whose benefits have been terminated.

This court realizes that some members of the class whose benefits have been terminated will be entitled to reinstatement under the Secretary's moratorium. There is much confusion, however, as to the exact terms and coverage of the moratorium. The Secretary herself has provided conflicting information, stating at one point that certain class members were covered only to come back another day and recant. The Secretary also failed to comply with an order of this court to furnish more details on the moratorium. In fact, at the April 26 hearing—two weeks after the "alleged" moratorium—the Secretary still could not explain in any detail the parameters of her moratorium. The one fact that is clear is that many terminated claimants are definitely not covered by the moratorium. The moratorium does not provide for reinstated benefits to persons whose appeals are pending in district court (rather than in the agency), like Plaintiff Polaski, or to persons whose appeals have been remanded to the Secretary by a district court, like Plaintiff Blaschko. In addition, the moratorium will not reinstate benefits to persons whose benefits were terminated following a "diaried" as opposed to a "periodic" review. In order to provide effective relief, this court is left with no alternative but to proceed with this class intact with the under-

standing, of course, that no one would be entitled to a double payment of benefits.

Class members who have never been awarded disability benefits by the Secretary are not in as strong a position as terminated claimants to seek immediate benefits pursuant to this preliminary injunction. With these first-time applicants, there has never been an agency finding of disability. This court is nonetheless tempted to grant plaintiffs' request for the immediate payment of benefits, at least to claimants with pending district court appeals, because of the Secretary's persistent and obstinate refusal to abide by the law. The Secretary has had a multitude of opportunities to apply the proper standards to these class members, but has continually refused to do so. It is troublesome to contemplate that this again might be the case if this court remands the claims of this segment of the class and again orders the Secretary to apply the proper law. Reluctantly, however, this court concludes that the Secretary should be given one last chance. The Secretary therefore is directed to evaluate under the proper standards the claims of these first-time applicants within the time periods specified below. Any claimant not receiving this individualized review in the mandated time will be entitled to immediate benefits.

This preliminary injunction includes within its terms of relief class members who have not pursued timely appeals. The fact that appeals were not filed in some cases is not an indication of how meritorious a case the claimants could present. Many claimants believe—after rounds of agency appeals—that further fighting would be futile. Others have been unable to retain attorneys. Affidavit of Arthur Gottsch. And some claimants may be so disabled that they could not perfect timely appeals.

The Secretary, through an affidavit submitted by Jean Hall Hinckley, Acting Deputy Associate Commissioner for Disability, implies that compliance with this order will be virtually impossible. According to Hinckley, it will take at least six months to merely identify "a substantial number" of

class members. Hinckley Affidavit, at p. 4. This court, in this age of computers, finds this assertion to be preposterous and frightening. Hinckley further states that the agency's problems will be compounded because it "is at present attempting to comply with a number of injunctive orders in major class action lawsuits nationwide." Hinckley Affidavit, at p. 4. This only serves to illustrate, once again, that the Secretary herself has brought on many of the difficulties now facing her. The fact that the magnitude of the Secretary's transgressions has been so overwhelming cannot stand as an argument for delaying remedial action. Instead, it further demonstrates the necessity for effective and immediate relief.

Accordingly, IT IS HEREBY ORDERED That a preliminary injunction be issued as to class members whose benefits have been or will be terminated and that the defendant, her employees, agents and assigns shall be:

1. Enjoined from terminating Title II or Title XVI benefits at any level of the administrative review process unless and until defendant has:

 a. Given timely and effective written notice to the recipient of disability benefits and his authorized representative, if any, of the proper pain and medical improvement standards and of the right to submit additional evidence; and

 b. Evaluated the recipient's continuing eligibility for disability benefits under the proper pain and medical improvement standards;

2. Enjoined from terminating disability payments to persons receiving continuing payments pursuant to Pub.L. 97–455 unless or until there has been an adverse decision by an Administrative Law Judge made in accordance with the requirements of paragraph 1, *supra;*

3. Ordered to notify all class members and their authorized representatives, if any, who are currently pursuing administrative or judicial appeals from the termination of their benefits and who are not currently receiving payments, of the proper pain and medical improvement standards, of the right to submit additional evidence, and of the right to reinstatement of payments.

These benefits shall continue until the Secretary determines, on a case-by-case basis and under the proper standards, that a claimant is not disabled.

For class members whose appeals are pending in district court and who choose reinstatement, their cases shall be remanded to the Secretary for this individualized review under the proper standards. The Secretary shall submit a notice of remand, along with a proposed order of remand, to the district court for each class member who requests reinstatement within 72 hours of claimant's request. These remands are intended to be administrative in nature, a procedural step to facilitate the transfer of cases from courts to the agency for compliance with this order. The Secretary's notice of remand shall state that the remand is being sought pursuant to the claimant's request and this court's injunction, and that immediate court action is requested.

4. Ordered to notify all class members and their authorized representatives, if any, who do not have timely administrative appeals pending of the proper pain and medical improvement standards, the right to have their claims reopened, the right to submit additional evidence, and the right to have payments reinstated;

5. Ordered to reopen the claims of class members whose files are located at the District Offices or at the Appeals Council and to return these files to the DDS for reevaluation under the proper pain and medical improvement standards, whether or not the claimant seeks reinstatement of payments pursuant to paragraph 4, *supra;*

6. It is further ordered that both parties shall submit to the court within five days of the date of this order proposed notices to be sent by the Secretary to class members pursuant to the terms of this order. This notice shall include information concerning the availability of attorneys under the So-

cial Security Act to assist claimants in their efforts to gain benefits. The Secretary shall mail such notices to class members within fifteen days of the court's approval of the forms. Class members shall be given thirty days to respond to such notices. Except for class members with appeals pending in district courts, the Secretary shall begin paying benefits to any class members requesting reinstatement within fifteen days of the request for reinstatement. For claimants with pending district court appeals, the Secretary shall begin paying benefits to any class members requesting reinstatement within fifteen days of the filing of the district court's remand order.

IT IS FURTHER ORDERED That a preliminary injunction be issued as to class members whose applications have been or will be denied as follows:

1. That the Secretary is ordered to issue a teletype within twenty-four hours of the date of this order notifying all offices of the Social Security Administration to process applications for Title II and Title XVI disability benefits, under the proper pain standard, and to notify the claimant of the proper pain standard if the application is denied;

2. That all class members whose applications have been denied by the defendant at any level of the administrative review process with no appeal pending, or who currently have an administrative appeal pending,

 a. Shall be issued a written notice (with a copy to his legal representative, if any) by the Secretary which contains the following:

 i. Asks the applicant whether he alleges he is unable to work in whole or in part because of pain or other subjective complaints;

 ii. Informs the applicant of the proper pain standard;

 iii. With respect to applicants who do not have a timely appeal pending, states that the applicant has a right, if he so chooses, to have his claim reopened and considered under the prop-

er pain standard, to submit additional evidence, to an expedited decision on his application within a stated time period, and to interim benefits if the Secretary fails to issue a decision within the stated time period;

 iv. With respect to applicants who currently have an administrative appeal pending, states that the applicant has a right, if he so chooses, to have his claim considered under the proper pain standard, to submit additional evidence, to an expedited decision on his application within a stated time period, and to interim benefits if the defendant fails to issue a decision within the stated time period.

 b. Upon receiving the timely written request from an applicant for an expedited decision, the Secretary shall consider the application under the proper pain standard and shall issue a written decision within the stated time period:

 i. For those persons whose applications are pending and/or will be considered at the initial application or the Reconsideration Level, the stated time period shall be sixty days from the date of receipt of the request for an expedited decision,

 ii. For those persons whose applications are pending and/or will be considered at the Administrative Law Judge or Appeals Council level, the stated time period shall be ninety days from receipt of the request for an expedited decision.

 c. In those cases in which the defendant has not issued an expedited decision within the stated time period, the Secretary shall commence paying current monthly interim benefits to the applicant from the date the stated time period has expired, and shall continue to pay such benefits until a written decision is issued.

3. That the Secretary shall reopen the claims of class members whose files are located at the District Offices or at the Appeals Council whether or not the claimant responds to the notice referred to in paragraph 2(a)(iii), *supra*. The files locat-

ed at the District Offices shall be returned to the DDS for evaluation under the proper pain standard, and the files located at the Appeals Council shall be returned to the Offices of Hearings and Appeals for evaluation under the proper pain standard.

4. That all class members whose applications have been denied in a final decision by the Secretary and who have requested review by a federal district court,

 a. Shall be issued a written notice (with a copy to his legal representative if any) by the Secretary which contains the following:

 i. Asks the applicant whether he alleges he is unable to work in whole or in part because of pain or other subjective complaints;

 ii. Informs the applicant of the proper pain standard,

 iii. States that the applicant has a right, if he so chooses, to have his claim remanded to the Secretary to be considered under the proper pain standard, to submit additional evidence, to an expedited decision on his application within a stated time period, and to interim benefits if the defendant fails to issue a decision within the stated time period.

 iv. Within 72 hours of an applicant's request to have his claim remanded, the Secretary shall submit a notice of remand, along with a proposed order, to the district court. These remands are intended to be administrative in nature, a procedural step to facilitate the transfer of cases from courts to the agency for compliance with this order. The Secretary's notice of remand shall state that the remand is being sought pursuant to the claimant's request and this court's injunction, and that immediate court action is requested.

 b. Upon receiving the timely written request from an applicant for an expedited decision, the Secretary shall consider the application under the proper pain standard and shall issue a written decision within thirty days from the date of the filing of the district court's remand order. In those cases in which the defendant has not issued an expedited decision within the stated time period of thirty days, the Secretary shall commence paying current monthly interim benefits to the applicant from the date the stated time period has expired, and shall continue to pay such benefits until a written decision is issued.

5. Both parties shall submit to the court within five days of the date of this order proposed form notices to be sent by the Secretary to class members pursuant to the terms of this order. This notice shall include information concerning the availability of attorneys under the Social Security Act to assist claimants in their efforts to gain benefits. The Secretary shall mail such notices to class members within fifteen days of the court's approval of the forms. Class members shall be given thirty days to respond to such notices.

IT IS FURTHER ORDERED That as used herein, the "proper medical improvement standard" is as follows:

Disability may be found to have ceased for medical reasons when there is material improvement in the individual's medical condition, or there was clear and specific error.

Material improvement means that, since the most recent decision, the medically determinable physical or mental impairment(s) which prevented the person from doing substantial gainful activity and entitled him/her to disability benefits has decreased to the point that the person can now perform substantial gainful activity. This improvement must be demonstrated by medical evidence consisting of signs, symptoms and laboratory findings and must show that either:

 a. the impairment(s) itself has decreased, or

 b. the effect of the impairment(s) on the person has decreased (for example through drug therapy; however, any negative effects, such as a drug reaction, must be considered).

Clear and specific error means the determination allowing or continuing disability

was plainly incorrect; e.g. evidence belonged to another individual, evidence was incorrectly reported or obviously misread. A difference in judgment on a case does not constitute clear and specific error.

IT IS FURTHER ORDERED That as used herein, the "proper pain standard" is as follows:

Disability may be found to exist when there is a medically determinable physical and mental impairment which provides an underlying basis for allegations of pain and other subjective complaints even if there is no objective evidence which explains or supports the degree or severity of the claimant's pain or other subjective complaints.

IT IS FURTHER ORDERED That plaintiffs' motion for a revised class certification is hereby granted.

IT IS FURTHER ORDERED That defendant's motion for a reconsideration of this court's April 17 order is hereby denied.

IT IS FURTHER ORDERED That defendant's motion for summary judgment is hereby denied.

IT IS FURTHER ORDERED That defendant shall furnish a complete copy of this opinion to all of her agents and personnel who will in any capacity act upon this order.